LEWIS, J.
This matter is before the Court upon the report, recommendation and proposal of the Supreme Court Committee on Standard Jury Instructions — Contract and Business Cases and a printed book of instructions prepared by the Committee for use when appropriate in civil cases. We have jurisdiction. See art. V, § 2(a), Fla. Const. This Court generally approves the theory and technique of instructing juries with regard to the applicable law as recommended by the Committee and embodied in the proposed instructions when applicable. Accordingly, this Court authorizes and directs the publication and use of these instructions, but without prejudice to the rights of any litigant objecting to the use of any of these approved forms.
In 1962, this Court established the Supreme Court Committee on Standard Jury Instructions as a committee of this Court to study and develop a program for standard jury instructions. By 1964, this Committee had determined that for the initial effort, the work and plan should be limited and directed to the preparation and publication of standard instructions for use in the trial of only negligence-type cases. In January 1967, this Committee had completed all work except the final editorial work on Florida Standard Jury Instructions. On April 19, 1967, this Court entered its final approval and authorized the publication of those instructions. The Supreme Court Committee on Standard Jury Instructions continues in existence and from time to time files new proposed instructions and amendments to instructions.
The lawyers and judges in Florida have found the existing Standard Jury Instructions, although limited to certain case types, to be beneficial to the administration of justice. With this predicate, since at least 1999, the Committee on Standard Jury Instructions has from time to time explored the possibility of expanding the work of the group to include instructions for other types of cases. As of July 2006, the existing committee had been unable to move forward and had terminated all efforts to proceed in that direction.
On September 15, 2006, then Chief Justice R. Fred Lewis entered Administrative Order AOSC6-47 which created the Supreme Court Committee on Standard Jury Instructions — Contract and Business Cases (Committee). The Committee was established because “[tjhere is a need for an additional standing committee to address standard jury instructions in contract and business litigation.... ” In re Supreme Court Committee on Standard Jury Instructions—Contract and Business Cases, AOSC06-47, at 2 (Sept. 15, 2006). The Committee was charged with performing the following tasks:
1. Organize a committee structure for perpetual operation to include leadership, rotation of membership, selection of members, an operational plan for submission of proposed instructions to the Florida Supreme Court for approval, and any other item necessary for the just and proper operations of the Committee.
2. Study and examine Florida law with regard to the principles of contract law and principles of law involved in business litigation that could properly be placed in uniform standardized jury instruction form. Based on this study and examination, develop, prepare, and propose to the Florida Supreme Court for approval uniform standard jury instructions for use in contract and business litigation in Florida. The Committee shall develop, prepare, and propose uniform standard jury instructions to include *286 both the jury process and the law to be applied in the decision process.
3. The Committee is authorized to coordinate and liaison with any other group, jury instruction or otherwise, as may be necessary and proper to accomplish the work required. The Committee is also authorized to seek expanded authority from the Florida Supreme Court as may be necessary to accomplish its mission.
4. The Committee shall have perpetual existence and shall meet at regular intervals to continue its review of the law and any existing standard jury instructions and supervise the proper maintenance and amendments of the jury instructions approved for use in Florida to conform with current applicable law.
5. Coordinate and participate, as necessary, in the process of printing and publication of the approved standard jury instructions.
6. The Committee shall have the goal of submitting a preliminary complete set of standard jury instructions for approval by September 1, 2007, or earlier as the work proceeds, and thereafter continue work to expand upon and refíne Florida standard jury instructions in contract and business litigation.
Id. at 2-8. Judge Thomas B. Smith, then Circuit Court Judge of the Ninth Judicial Circuit was appointed to serve as Chair of the Committee.[1] The Committee was composed of trial and appellate attorneys throughout the State of Florida, judges of the various circuit and district courts of appeal, and individuals with specific expertise and experience in this subject.
After six years of dedicated and tireless efforts, on September 11, 2012, this Contract and Business group filed its report with the Court proposing a complete, stand-alone set of jury instructions for contract and business cases. The book of instructions filed by the Committee is Appendix A. The Committee explained that it surveyed other states that had previously drafted standard jury instructions in contract and business cases. The goal was to identify a state possessing instructions which could serve as a form template for drafting a similar set of instructions, but all based on Florida law. This group ultimately concluded that California possessed a form (not substance) to follow, and received permission from the Judicial Council of California to use its instructions as a model form only for drafting a set of instructions for use in Florida based on substantive Florida law. The Committee further explained that it proceeded with its work as follows:
The committee divided into six subcommittees, researched and drafted proposed instructions which followed Florida law. Upon completion of the subcommittees’ work, the full committee met to review and revise each proposed instruction for accuracy and conformity with Florida law. To improve juror understanding, the committee has used ‘plain English’ terminology wherever possible without altering the instructions’ substantive meaning.
In addition, this group received permission from the Florida Supreme Court Committee on Standard Jury Instructions in Civil *287 Cases to duplicate the “How to Use This Book” section as well as Sections 100, 200, 300, 600, 700, and 800 for use in the Contract and Business Cases book. Accordingly, these business and contract-specific instructions are limited to Sections 400 and 500 of the proposed instructions. The Committee published its proposals for comment in The Florida Bar News on July 1, 2011, December 15, 2011, and April 1, 2012.[2] The Committee received two comments, each directed to a proposed instruction on the affirmative defense of promissory estoppel. Based upon the comments, the Committee withheld that proposed instruction for further study. The Committee unanimously recommended that the Court authorize for publication and use the instructions as proposed.
This Court has always recognized that the initial determination of the substantive law applicable in all cases must be made by the trial judge and it would be inappropriate for this Court, at this time, and without a case or controversy before us, to adjudicate all legal principles embodied in these recommended instructions as correctly setting forth the substantive law applicable in any particular case. An approval of jury instruction forms by this Court does not relieve a trial judge of the responsibility under Florida law to properly and correctly instruct the jury in each case as it arises. This approval is not intended nor should it be construed as an intrusion into that responsibility of the trial judges. This Court is confident that these forms of instructions, as recommended by the Committee, state as accurately and correctly as a group of experienced lawyers and judges could state the substantive law of Florida in language understandable by jurors.
After full consideration, we authorize, approve and direct that the Standard Jury Instructions — Contract and Business Cases be published and distributed for use as applicable in Florida. The instructions under Sections 100, 300, and 600 are also authorized and approved. As we further discuss, we authorize and approve the instructions in Sections 200, 700, and 800 with minor modifications.
First, we modify instruction 202.2 (Explanation of the Trial Procedure) to construct the instruction consistent with the corresponding instruction in other civil cases. Under “Objections,” the instruction is modified to include the phrase “you should disregard the question and” as follows: “If I say that an objection is ‘sustained,’ that means you should disregard the question and the witness may not answer the question.”
Next, we modify Section 700 — Closing Instructions, to delete the following language: “After you have decided what the facts are, you may find that some instructions do not apply. In that case, follow the instructions that do apply and use them together with the facts to reach your verdict.” This language is contrary to the original intent of the Supreme Court Committee on Standard Jury Instructions in Civil Cases, as expressed by that Committee in In Re: Standard Jury Instructions in Civil Cases—Report No. 12-02, 115 So.3d 208 (Fla.2013).
Finally, we modify the Notes on Use to instruction 801.2 (Read-Back of Testimony) in two ways. First, the modification reflects the Court’s decision in Johnson v. State, 53 So.3d 1003, 1011 (Fla.2010), holding that, when preserved, it is per se reversible error for a trial judge to inform *288 the jury that they are prohibited from requesting a read-back of testimony. Accordingly, the Notes on Use to instruction 801.2 (Read-Back of Testimony) are modified to include the following note:
1. In civil cases, the decision to allow read-back of testimony lies within the sound discretion of the trial court. Broward Cnty. Sch. Bd. v. Ruiz, 493 So.2d 474, 479-80 (Fla. 4th DCA 1986). However, the trial court must not tell jurors that they are prohibited from requesting a read-back of testimony. Johnson v. State, 53 So.3d 1003 (Fla.2010).
Second, we modify the Notes on Use to reflect that testimony read back to the jury must be read in open court, that transcripts or tapes of testimony must not be sent to the jury room, and that these matters are not discretionary.
Accordingly, we hereby authorize and direct the publication of the Standard Jury Instructions — Contract and Business Cases for publication and use as set forth in the appendix to this opinion. In authorizing the publication and use of these instructions, we express no opinion on their correctness and remind all interested parties that this authorization does not foreclose either requesting additional or alternative instructions or contesting the legal correctness of the instructions. We further caution all interested parties that any comments associated with the instructions reflect only the opinion of the Committee and are not necessarily indicative of the views of this Court as to their correctness or applicability. The instructions as set forth in the appendix, fully engrossed, shall be effective when this opinion becomes final.
We wish to acknowledge the diligent hard work and thoughtful consideration of the Committee and its leadership in bringing the recommendations of instructions to be used in contract and business cases to the Court. We also extend our great appreciation to the Judicial Council of California for permitting Florida to follow the pattern used in California and entering into the licensing agreement which authorized use of that form.
It is ordered by the Court that:
(1) The Supreme Court Committee on Standard Jury Instructions — Contract and Business Cases and The Florida Bar are authorized and directed to forthwith publish and distribute the instructions attached as exhibit A as a self-contained, free-standing publication. These Standard Jury Instructions shall also be placed on this Court’s website.
(2) All references to the Florida Standard Jury Instructions and Standard Jury Instructions as set forth in Rule 1.470(b), Florida Rules of Civil Procedure, shall also include these Standard Jury Instructions — Contract and Business Cases.
(3) The Supreme Court Committee on Standard Jury Instructions — Contract and Business Cases is continued as an independent working committee of this Court pursuant to Administrative Order AOSC06-47 for the purpose of fulfilling the directives in that Administrative Order and continuously reviewing these instructions for additions, correction of any errors or inaccuracies, and recommending to this Court amendments and revisions as experience may demonstrate to be necessary or beneficial and any new or additional instructions.
(4) In accordance with the Administrative Order which established this Committee, the members of the Bench and Bar who shall constitute the continuing Committee shall be appointed or reappointed by the Court pursuant to such *289 Administrative Order and serve without compensation.
It is so ordered.
POLSTON, C.J., and PARIENTE, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.
EXHIBIT A
FLORIDA STANDARD JURY INSTRUCTIONS — CONTRACT AND BUSINESS CASES
[[Image here]]
SUPREME COURT COMMITTEE ON STANDARD JURY INSTRUCTIONS— CONTRACT AND BUSINESS CASES
ACKNOWLEDGMENTS
The Supreme Court of Florida is grateful for the cooperation, assistance, and contributions that the following judges and attorneys extended during the development of these standard jury instructions in contract and business cases.
The Honorable R. Fred Lewis Chief Justice and Founder of this Supreme Court Committee on Standard Jury-
Instructions — Contract and Business Cases
The Honorable Thomas B. Smith, Chair Magistrate Judge, U.S. District Court for the Middle District of Florida
The Honorable Brian D. Lambert Circuit Court Judge, Fifth Judicial Circuit
Mr. Robert E. Austin, Jr.
Attorney at Law, Leesburg
Mr. Richard Lee Barrett
Attorney at Law, Orlando
Mr. Mitchell W. Berger
Attorney at Law, Ft. Lauderdale
Mr. Bruce J. Berman
Attorney at Law, Miami
Mr. Mark A. Boyle, Sr.
Attorney at Law, Fort Myers
Professor Cynthia Bulan
Nova Southeastern University, Ft. Lauderdale
The Honorable Charles T. Canady Justice, Supreme Court of Florida
Mr. G. Donovan Conwell, Jr.
Attorney at Law, Tampa
The Honorable Angel T. Cortinas
Appellate Judge, Third District Court of Appeal
The Honorable Dorian K. Damoorgian
Appellate Judge, Fourth District Court of Appeal
Mr. John A Devault, III
Attorney at Law, Jacksonville
Mr. Thomas S. Edwards, Jr.
Attorney at Law, Jacksonville
Mr. Manuel Farach
Attorney at Law, West Palm Beach
The Honorable Gary M. Farmer
Appellate Judge, Fourth District Court of Appeal
Mr. Roy E. Fitzgerald, III
Attorney at Law, West Palm Beach
Mr. Ron Gaché’
Attorney at Law, West Palm Beach
The Honorable Jonathan D. Gerber
Appellate Judge, Fourth District Court of Appeal
Ms. Barbara Green
Attorney at Law, Coral Gables
*290 Mr. Lee L. Haas
Attorney at Law, Clearwater
Mr. Michael J. Higer
Attorney at Law, Aventura
Mr. Benjamin H. Hill, III
Attorney at Law, Tampa
Mr. James M. Kaplan
Attorney at Law, Miami
Mr. Jonathan C. Koch
Attorney at Law, Tampa
Ms. Katherine C. Lake
Attorney at Law, Tampa
Mr. Eric Lee
Attorney at Law, Boca Raton
Mr. Kurt Lee
Attorney at Law, Pensacola
The Honorable Brian D. Lambert
Circuit Judge, Fifth Judicial Circuit
Ms. Christine Edwards Lamia
Attorney at Law, Tallahassee
Ms. Maxine M. Long
Attorney at Law, Miami
The Honorable Bernard Nachman
Circuit Judge, Fourth Judicial Circuit
Mr. Robert M. Norway
Attorney at Law, Orlando
Mr. Michael S. Olin
Attorney at Law, Miami
Mr. Eduardo Palmer
Attorney at Law, Coral Gables
Mr. Gera Peoples
Attorney at Law, Fort Lauderdale
Ms. Allison Perez
Attorney at Law, Orlando
Mr. Steven R. Reininger
Attorney at Law, Coral Gables
Mr. T. Tucker Ronzetti
Attorney at Law, Coral Gables
Mr. Gary Rosen
Attorney at Law, Fort Lauderdale
Mr. E. Lanny Russell
Attorney at Law, Jacksonville
The Honorable Meenu Sasser
Circuit Judge, Fifteenth Judicial Circuit
Mr. Paul Silverberg
Attorney at Law, Westin
Mr. Brian F. Spector
Attorney at Law, Miami
Professor Manuel A. Utset, Jr.
Florida State University College of Law, Tallahassee
The Honorable William A. Van Nortwick
Appellate Judge, First District Court of Appeal
Mr. Louis Vocelle, Jr.
Attorney at Law, Vero Beach
Mr. Mark M. Wall
Attorney at Law, Tampa
The Honorable Waddell Arlie Wallace, III
Circuit Judge, Fourth Judicial Circuit
Ms. Jane Kreusler-Walsh
Attorney at Law, West Palm Beach
APPENDIX
SECTION 100 — OATHS
101.1 OATH OF JURORS BEFORE VOIR DIRE
Do you solemnly swear or affirm that you will answer truthfully all questions asked of you as prospective jurors [so help you God]?
101.2 OATH OF JUROR AFTER VOIR DIRE
Do you solemnly swear or affirm that you will well and truly try this case between the [plaintiff(s) ] [petitioner(s) ] and [defendant(s) ] [respondents) ], and a true verdict render according to the law and evidence [so help you God]?
101.3 OATH OF A WITNESS
Do you solemnly swear or affirm that the evidence you are about to give will *291 be the truth, the whole truth, and nothing but the truth [so help you God]?
101.4 OATH OF AN INTERPRETER
Do you solemnly swear or affirm that you will make a true interpretation to the witness of all questions or statements made to [him][her] in a language which that person understands, and a true interpretation of the witness’ statements into the English language [so help you God]?
SECTION 200 — PRELIMINARY INSTRUCTIONS
QUALIFICATIONS INSTRUCTION
Many of you have cell phones, computers, and other electronic devices. Even though you have not yet been selected as a juror, there are some strict rules that you must follow about using your cell phones, electronic devices and computers. You must not use any device to search the Internet or to find out anything related to any cases in the courthouse.
Between now and when you have been discharged from jury duty by the judge, you must not provide or receive any information about your jury service to anyone, including friends, co-workers, and family members. You may tell those who need to know where you are that you have been called for jury duty. If you are picked for a jury, you may tell people that you have been picked for a jury and how long the case may take. However, you must not give anyone any information about the case itself or the people involved in the case. You must also warn people not to try to say anything to you or write to you about your jury service or the case. This includes face-to-face, phone or computer communications.
In this age of electronic communication, I want to stress that you must not use electronic devices or computers to talk about this case, including tweeting, texting, blogging, e-mailing, posting information on a website or chat room, or any other means at all. Do not send or accept any messages, including e-mail and text messages, about your jury service. You must not disclose your thoughts about your jury service or ask for advice on how to decide any case.
After you are called to the courtroom, the judge will give you specific instructions about these matters. A judge will tell you when you are released from this instruction. All of us are depending on you to follow these rules, so that there will be a fair and lawful resolution of every case.
NOTE ON USE
This instruction should be given in addition to and at the conclusion of the instructions normally given to the prospective jurors. The portion of this instruction dealing with communication with others and outside research may need to be modified to include other specified means of communication or research as technology develops.
A. DURING JURY SELECTION
201.1 DESCRIPTION OF THE CASE
(Before Voir Dire)
Welcome. [I] [The clerk] will now administer your oath.
Now that you have been sworn, I’d like to give you an idea about what we are here to do.
This is a civil trial. A civil trial is different from a criminal case, where a *292 defendant is charged by the state prosecutor with committing a crime. The subject of a civil trial is a disagreement between people or companies [or others, as appropriate], where the claims of one or more of these parties have been brought to court to be resolved. It is called “a trial of a lawsuit.”
This is a case about (insert brief description of claim(s) and defense(s) brought to trial in this case).
The principal witnesses who will testify in this case are (list witnesses).
201.2 INTRODUCTION OF PARTICIPANTS AND THEIR ROLES

Who are the people here and what do they do?

Judge/Court: I am the Judge. You may hear people occasionally refer to me as “The Court.” That is the formal name for my role. My job is to maintain order and decide how to apply the rules of the law to the trial. I will also explain various rules to you that you will need to know in order to do your job as the jury. It is my job to remain neutral on the issues of this lawsuit.
Attorneys: The attorneys to whom I will introduce you have the job of representing their clients. That is, they speak for their client here at the trial. They have taken oaths as attorneys to do their best and to follow the rules for their profession.
Plaintiffs Counsel: The attorney on this side of the courtroom, (introduce by name), represents (client name) and is the person who filed the lawsuit here at the courthouse. [His][Her] job is to present [his] [her] client’s side of things to you. [He][She] and [his][her] client will be referred to most of the time as “the plaintiff.”
Defendant’s Counsel: The attorney on this side of the courtroom, (introduce by name), represents (client name), the one who has been sued. [His][Her] job is to present [his][her] client’s side of things to you. [He][She] and [his][her] client will usually be referred to here as “the defendant.”
Court Clerk: This person sitting in front of me, (name), is the court clerk. [He][She] is here to assist me with some of the mechanics of the trial process, including the numbering and collection of the exhibits that are introduced in the course of the trial.
Court Reporter: The person sitting at the stenographic machine, (name), is the court reporter. [His][Her] job is to keep an accurate legal record of everything we say and do during this trial.
Bailiff: The person over there, (name), is the bailiff. [His][Her] job is to maintain order and security in the courtroom. The bailiff is also my representative to the jury. Anything you need or any problems that come up for you during the course of the trial should be brought to [him][her]. However, the bailiff cannot answer any of your questions about the case. Only I can do that.
Jury: Last, but not least, is the jury, which we will begin to select in a few moments from among all of you. The jury’s job will be to decide what the facts are and what the facts mean. Jurors should be as neutral as possible at this point and have no fixed opinion about the lawsuit.
In order to have a fair and lawful trial, there are rules that all jurors must follow. A basic rule is that jurors must decide the case only on the evidence *293 presented in the courtroom. You must not communicate with anyone, including friends and family members, about this case, the people and places involved, or your jury service. You must not disclose your thoughts about this case or ask for advice on how to decide this case.
I want to stress that this rule means you must not use electronic devices or computers to communicate about this case, including tweeting, texting, blogging, e-mailing, posting information on a website or chat room, or any other means at all. Do not send or accept any messages to or from anyone about this case or your jury service.
You must not do any research or look up words, names, [maps], or anything else that may have anything to do with this case. This includes reading newspapers, watching television or using a computer, cell phone, the Internet, any electronic device, or any other means at all, to get information related to this case or the people and places involved in this case. This applies whether you are in the courthouse, at home, or anywhere else.
All of us are depending on you to follow these rules, so that there will be a fair and lawful resolution to this case. Unlike questions that you may be allowed to ask in court, which will be answered in court in the presence of the judge and the parties, if you investigate, research or make inquiries on your own outside of the courtroom, the trial judge has no way to assure they are proper and relevant to the case. The parties likewise have no opportunity to dispute the accuracy of what you find or to provide rebuttal evidence to it. That is contrary to our judicial system, which assures every party the right to ask questions about and rebut the evidence being considered against it and to present argument with respect to that evidence. Non-court inquiries and investigations unfairly and improperly prevent the parties from having that opportunity our judicial system promises. If you become aware of any violation of these instructions or any other instruction I give in this case, you must tell me by giving a note to the bailiff.
NOTE ON USE FOR 201.2
The portion of this instruction dealing with communication with others and outside research may need to be modified to include other specified means of communication or research as technology develops.
201.3 EXPLANATION OF THE VOIR DIRE PROCESS

Voir Dire:

The last thing I want to do, before we begin to select the jury, is to explain to you how the selection process works.
Questions/Challenges: This is the part of the case where the parties and their lawyers have the opportunity to get to know a little bit about you, in order to help them come to their own conclusions about your ability to be fair and impartial, so they can decide who they think should be the jurors in this case.
How we go about that is as follows: First, I’ll ask some general questions of you. Then, each of the lawyers will have more specific questions that they will ask of you. After they have asked all of their questions, I will meet with them and they will tell me their choices for jurors. Each side can ask that I exclude a person from serving on a jury if they can give me a reason to believe that he or she might be unable to be fair and impartial. That is what is called a *294 challenge for cause. The lawyers also have a certain number of what are called peremptory challenges, by which they may exclude a person from the jury without giving a reason. By this process of elimination, the remaining persons are selected as the jury. It may take more than one conference among the parties, their attorneys, and me before the final selections are made.
Purpose of Questioning: The questions that you will be asked during this process are not intended to embarrass you or unnecessarily pry into your personal affairs, but it is important that the parties and their attorneys know enough about you to make this important decision. If a question is asked that you would prefer not to answer in front of the whole courtroom, just let me know and you can come up here and give your answer just in front of the attorneys and me. If you have a question of either the attorneys or me, don’t hesitate to let me know.
Response to Questioning: There are no right or wrong answers to the questions that will be asked of you. The only thing that I ask is that you answer the questions as frankly and as honestly and as completely as you can. You [will take] [have taken] an oath to answer all questions truthfully and completely and you must do so. Remaining silent when you have information you should disclose is a violation of that oath as well. If a juror violates this oath, it not only may result in having to try the case all over again but also can result in civil and criminal penalties against a juror personally. So, again, it is very important that you be as honest and complete with your answers as you possibly can. If you don’t understand the question, please raise your hand and ask for an explanation or clarification.
In sum, this is a process to assist the parties and their attorneys to select a fair and impartial jury. All of the questions they ask you are for this purpose. If, for any reason, you do not think you can be a fair and impartial juror, you must tell us.
NOTES ON USE FOR 201.3
1. The publication of this recommended instruction is not intended to intrude upon the trial judge’s own style and manner of delivery. It may be useful in cataloging the subjects to be covered in an introductory instruction.
2. The portion of this instruction dealing with communication with others and outside research may need to be modified to include other specified means of communication or research as technology develops.
B. AFTER JURY SELECTED AND SWORN
202.1 INTRODUCTION

Administer oath:

You have now taken an oath to serve as jurors in this trial. Before we begin, I am going to tell you about the rules of law that apply to this case and let you know what you can expect as the trial proceeds.
It is my intention to give you [all] [most] of the rules of law but it might be that I will not know for sure all of the law that will apply in this case until all of the evidence is presented. However, I can anticipate most of the law and give it to you at the beginning of the trial so that you will better understand what to be looking for while the evidence is presented. If I later decide that different or additional law applies to the *295 case, I will tell you. In any event, at the end of the evidence I will give you the final instructions on which you must base your verdict. At that time, you will have a complete written set of the instructions so you do not have to memorize what I am about to tell you.

(Continue with the Substantive Law, Damages, and General Instructions from the applicable sections of this book, followed by the applicable parts of 202.2 through 202.5)

NOTE ON USE FOR 202.1
The committee recommends giving the jury at the beginning of the trial a complete as possible set of instructions on the Substantive Law, Damages, and General Instructions.
202.2 EXPLANATION OF THE TRIAL PROCEDURE
Now that you have heard the law, I want to let you know what you can expect as the trial proceeds.
Opening Statements: In a few moments, the attorneys will each have a chance to make what are called opening statements. In an opening statement, an attorney is allowed to give you [his][her] views about what the evidence will be in the trial and what you are likely to see and hear in the testimony.
Evidentiary Phase: After the attorneys’ opening statements the plaintiffs will bring their witnesses and evidence to you.
Evidence: Evidence is the information that the law allows you to see or hear in deciding this case. Evidence includes the testimony of the witnesses, documents, and anything else that I instruct you to consider.
Witnesses: A witness is a person who takes an oath to tell the truth and then answers attorneys’ questions for the jury. The answering of attorneys’ questions by witnesses is called “giving testimony.” Testimony means statements that are made when someone has sworn an oath to tell the truth.
The plaintiffs lawyer will normally ask a witness the questions first. That is called direct examination. Then the defense lawyer may ask the same witness additional questions about whatever the witness has testified to. That is called cross-examination. Certain documents or other evidence may also be shown to you during direct or cross-examination. After the plaintiffs witnesses have testified, the defendant will have the opportunity to put witnesses on the stand and go through the same process. Then the plaintiffs lawyer gets to do cross-examination. The process is designed to be fair to both sides.
It is important that you remember that testimony comes from witnesses. The attorneys do not give testimony and they are not themselves witnesses.
Objections: Sometimes the attorneys will disagree about the rules for trial procedure when a question is asked of a witness. When that happens, one of the lawyers may make what is called an “objection.” The rules for a trial can be complicated, and there are many reasons for attorneys to object. You should simply wait for me to decide how to proceed. If I say that an objection is “sustained,” that means you should disregard the question and the witness may not answer the question. If I say that the objection is “overruled,” that means the witness may answer the question.
When there is an objection and I make a decision, you must not assume from that decision that I have any par *296 ticular opinion other than that the rules for conducting a trial are being correctly followed. If I say a question may not be asked or answered, you must not try to guess what the answer would have been. That is against the rules, too.
Side Bar Conferences: Sometimes I will need to speak to the attorneys about legal elements of the case that are not appropriate for the jury to hear. The attorneys and I will try to have as few of these conferences as possible while you are giving us your valuable time in the courtroom. But, if we do have to have such a conference during testimony, we will try to hold the conference at the side of my desk so that we do not have to take a break and ask you to leave the courtroom.
Recesses: Breaks in an ongoing trial are usually called “recesses.” During a recess you still have your duties as a juror and must follow the rules, even while having coffee, at lunch, or at home.
Instructions Before Closing Arguments: After all the evidence has been presented to you, I will instruct you in the law that you must follow. It is important that you remember these instructions to assist you in evaluating the final attorney presentations, which come next, and, later, during your deliberations, to help you correctly sort through the evidence to reach your decision.
Closing Arguments: The attorneys will then have the opportunity to make their final presentations to you, which are called closing arguments.
Final Instructions: After you have heard the closing arguments, I will instruct you further in the law as well as explain to you the procedures you must follow to decide the case.
Deliberations: After you hear the final jury instructions, you will go to the jury room and discuss and decide the questions I have put on your verdict form. [You will have a copy of the jury instructions to use during your discussions.] The discussions you have and the decisions you make are usually called “jury deliberations.” Your deliberations are absolutely private and neither I nor anyone else will be with you in the jury room.
Verdict: When you have finished answering the questions, you will give the verdict form to the bailiff, and we will all return to the courtroom where your verdict will be read. When that is completed, you will be released from your assignment as a juror.

What are the rules?

Finally, before we begin the trial, I want to give you just a brief explanation of rules you must follow as the case proceeds.
Keeping an Open Mind: You must pay close attention to the testimony and other evidence as it comes into the trial. However, you must avoid forming any final opinion or telling anyone else your views on the case until you begin your deliberations. This rule requires you to keep an open mind until you have heard all of the evidence and is designed to prevent you from influencing how your fellow jurors think until they have heard all of the evidence and had an opportunity to form their own opinions. The time and place for coming to your final opinions and speaking about them with your fellow jurors is during deliberations in the jury room, after all of the evidence has been presented, closing arguments have been made, and I have instructed you on the law. It is important that you hear all of the facts and *297 that you hear the law and how to apply it before you start deciding anything.
Consider Only the Evidence: It is the things you hear and see in this courtroom that matter in this trial. The law tells us that a juror can consider only the testimony and other evidence that all the other jurors have also heard and seen in the presence of the judge and the lawyers. Doing anything else is wrong and is against the law. That means that you must not do any work or investigation of your own about the case. You must not obtain on your own any information about the case or about anyone involved in the case, from any source whatsoever. This includes reading newspapers, watching television or using a computer, cell phone, the Internet, any electronic device, or any other means at all, to get information related to this case or the people and places involved in this case. This applies whether you are in the courthouse, at home, or anywhere else. You must not visit places mentioned in the trial or use the internet to look at maps or pictures to see any place discussed during trial.
Do not provide any information about this case to anyone, including friends or family members. Do not let anyone, including the closest family members, make comments to you or ask questions about the trial. Jurors must not have discussions of any sort with friends or family members about the case or the people and places involved. So, do not let even the closest family members make comments to you or ask questions about the trial. In this age of electronic communication, I want to stress again that just as you must not talk about this case face-to-face, you must not talk about this case by using an electronic device. You must not use phones, computers or other electronic devices to communicate. Do not send or accept any messages related to this case or your jury service. Do not discuss this case or ask for advice by any means at all, including posting information on an Internet website, chat room or blog.
No Mid-Trial Discussions: When we are in a recess, do not discuss anything about the trial or the case with each other or with anyone else. If attorneys approach you, don’t speak with them. The law says they are to avoid contact with you. If an attorney will not look at you or speak to you, do not be offended or form a conclusion about that behavior. The attorney is not supposed to interact with jurors outside of the courtroom and is only following the rules. The attorney is not being impolite. If an attorney or anyone else does try to speak with you or says something about the case in your presence, please inform the bailiff immediately.
Only the Jury Decides: Only you get to deliberate and answer the verdict questions at the end of the trial. I will not intrude into your deliberations at all. I am required to be neutral. You should not assume that I prefer one decision over another. You should not try to guess what my opinion is about any part of the case. It would be wrong for you to conclude that anything I say or do means that I am for one side or another in the trial. Discussing and deciding the facts is your job alone.
NOTES ON USE FOR 202.2
1. This instruction is intended for situations in which at the end of the case the jury is going to be instructed before closing argument. The committee strongly recommends instructing the jury before closing argument. If, however, the court is going to instruct the jury after closing *298 argument, this instruction will have to be amended.
2. The publication of this recommended instruction is not intended to intrude upon the trial judge’s own style and manner of delivery. It may be useful in cataloging the subjects to be covered in an introductory instruction.
3. The portion of this instruction dealing with communication with others and outside research may need to be modified to include other specified means of communication or research as technology develops.
202.3 NOTE-TAKING BY JURORS
If you would like to take notes during the trial, you may do so. On the other hand, of course, you are not required to take notes if you do not want to. That will be left up to you individually.
You will be provided with a note pad and a pen for use if you wish to take notes. Any notes that you take will be for your personal use. However, you should not take them with you from the courtroom. During recesses, the bailiff will take possession of your notes and will return them to you when we reconvene. After you have completed your deliberations, the bailiff will deliver your notes to me. They will be destroyed. No one will ever read your notes.
If you take notes, do not get so involved in note-taking that you become distracted from the proceedings. Your notes should be used only as aids to your memory.
Whether or not you take notes, you should rely on your memory of the evidence and you should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than each juror’s memory of the evidence.
NOTES ON USE FOR 202.3
1. The court should furnish all jurors with the necessary pads and pens for taking notes. Additionally, it may be desirable for jurors to be furnished with envelopes to place the notes for additional privacy.
2. Fla. R. Jud. Admin. 2.430(k) provides that at the conclusion of the trial, the court shall collect and immediately destroy all juror notes.
3. Fla. R. Civ. P. 1.455 provides that the trial court may, in its discretion, authorize the use of juror notebooks to contain documents and exhibits as an aid to the jurors in performing their duties.
4. When it is impractical to take exhibits into the jury room, this instruction should be modified to describe how the jury will have access to the exhibits.
202.4 JUROR QUESTIONS
During the trial, you may have a question you think should be asked of a witness. If so, there is a procedure by which you may request that I ask the witness a question. After all the attorneys have completed their questioning of the witness, you should raise your hand if you have a question. I will then give you sufficient time to write the question on a piece of paper, fold it, and give it to the bailiff, who will pass it to me. You must not show your question to anyone or discuss it with anyone.
I will then review the question with the attorneys. Under our law, only certain evidence may be considered by a jury in determining a verdict. You are bound by the same rules of evidence that control the attorneys’ questions. If I decide that the question may not be *299 asked under our rules of evidence, I will tell you. Otherwise, I will direct the question to the witness. The attorneys may then ask follow-up questions if they wish. If there are additional questions from jurors, we will follow the same procedure again.
By providing this procedure, I do not mean to suggest that you must or should submit written questions for witnesses. In most cases, the lawyers will have asked the necessary questions.
NOTE ON USE FOR 202.4
Fla. R. Civ. P. 1.452 mandates that jurors be permitted to submit written questions directed to witnesses or the court.
202.5 JURY TO BE GUIDED BY
OFFICIAL ENGLISH TRANSLATION/INTERPRETATION
[A] [Some] witness[es] may testify in (language to be used) which will be interpreted in English.
The evidence you are to consider is only that provided through the official court interpreters. Although some of you may know (language used), it is important that all jurors consider the same evidence. Therefore, you must accept the English interpretation. You must disregard any different meaning.
If, however, during the testimony there is a question as to the accuracy of the English interpretation, you should bring this matter to my attention immediately by raising your hand. You should not ask your question or make any comment about the interpretation in the presence of the other jurors, or otherwise share your question or concern with any of them. I will take steps to see if your question can be answered and any discrepancy resolved. If, however, after such efforts a discrepancy remains, I emphasize that you must rely only upon the official English interpretation as provided by the court interpreter and disregard any other contrary interpretation.
NOTE ON USE FOR 202.5
When instructing the jury at the beginning of the trial, this instruction should be used in lieu of 601.3. See United States v. Franco, 136 F.3d 622, 626 (9th Cir.1998); United States v. Fuentes-Montijo, 68 F.3d 352, 355-56 (9th Cir.1995).
SECTION 300 — EVIDENCE INSTRUCTIONS
301.1 DEPOSITION TESTIMONY, INTERROGATORIES, STIPULATED TESTIMONY, STIPULATIONS, AND ADMISSIONS

a. Deposition or prior testimony:

Members of the jury, the sworn testimony of (name), given before trial, will now be presented. You are to consider and weigh this testimony as you would any other evidence in the case.

b. Interrogatories:

Members of the jury, answers to interrogatories will now be read to you. Interrogatories are written questions that have been presented before trial by one party to another. They are answered under oath. You are to consider and weigh these questions and answers as you would any other evidence in the case.
c. Stipulated testimony:
Members of the jury, the parties have agreed that if (name of witness) were called as a witness, [he][she] would tes *300 tify (read or describe the testimony). You are to consider and weigh this testimony as you would any other evidence in the case.

d. Stipulations:

Members of the jury, the parties have agreed to certain facts. You must accept these facts as true. (Read the agreed facts).

e. Admissions:

1. Applicable to all parties:

Members of the jury, (identify the party or parties that have admitted the facts) [has] [have] admitted certain facts. You must accept these facts as true. (Read the admissions).

2. Applicable to fewer than all parties:

Members of the jury, (identify the party or parties that have admitted the facts) [has] [have] admitted certain facts. You must accept these facts as true in deciding the issues between (identify the affected parties), but these facts should not be used in deciding the issues between (identify the unaffected parties). (Read the admissions).
NOTE ON USE FOR 301.1
The committee recommends that the appropriate explanation be read immediately before a deposition, or an interrogatory and answer, stipulated testimony, a stipulation, or an admission are read in evidence, and that no instruction on the subject be repeated at the conclusion of the trial.
301.2INSTRUCTION WHEN FIRST ITEM OF DOCUMENTARY, PHOTOGRAPHIC, OR PHYSICAL EVIDENCE IS ADMITTED
The (describe item of evidence) has now been received in evidence. Witnesses may testify about or refer to this or any other item of evidence during the remainder of the trial. This and all other items received in evidence will be available to you for examination during your deliberations at the end of the trial.
NOTE ON USE FOR 301.2
This instruction should be given when the first item of evidence is received in evidence. It may be appropriate to repeat this instruction when items received in evidence are not published to the jury. It may be combined with 301.5 in appropriate circumstances. It may also be given in conjunction with 301.4 if a witness has used exhibits which have been admitted in evidence and demonstrative aids which have not.
301.3 INSTRUCTION WHEN EVIDENCE IS FIRST PUBLISHED TO JURORS
The (describe item of evidence) has been received in evidence. It is being shown to you now to help you understand the testimony of this witness and other witnesses in the case, as well as the evidence as a whole. You may examine (describe item of evidence) briefly now. It will also be available to you for examination during your deliberations at the end of the trial.
NOTE ON USE FOR 301.3
This instruction may be given when an item received in evidence is handed to the jurors. It may be combined with 301.5 in appropriate circumstances.
301.4 INSTRUCTION REGARDING VISUAL OR DEMONSTRATIVE AIDS

a. Generally:

This witness will be using (identify demonstrative or visual aid(s)) to assist in *301 explaining or illustrating [his][her] testimony. The testimony of the witness is evidence; however, [this] [these] (identify demonstrative or visual aid(s)) [is][are] not to be considered as evidence in the case unless received in evidence, and should not be used as a substitute for evidence. Only items received in evidence will be available to you for consideration during your deliberations.

b. Specially created visual or demonstrative aids based on disputed assumptions:

This witness will be using (identify demonstrative aid(s)) to assist in explaining or illustrating [his][her] testimony. [This] [These] item[s][has] [have] been prepared to assist this witness in explaining [his][her] testimony. [It] [They] may be based on assumptions which you are free to accept or reject. The testimony of the witness is evidence; however, [this] [these] (identify demonstrative or visual aid(s)) [is][are] not to be considered as evidence in the case unless received in evidence, and should not be used as a substitute for evidence. Only items received in evidence will be available to you for consideration during your deliberations.
NOTES ON USE FOR 301.4
1. Instruction 301.4a should be given at the time a witness first uses a demonstrative or visual aid which has not been specially created for use in the case, such as a skeletal model.
2. Instruction 301.4b is designed for use when a witness intends to use demonstrative or visual aids which are based on disputed assumptions, such as a computer-generated model. This instruction should be given at the time the witness first uses these demonstrative or visual aids. This instruction should be used in conjunction with 301.3 if a witness uses exhibits during testimony, some of which are received in evidence, and some of which are not.
301.5 EVIDENCE ADMITTED FOR A LIMITED PURPOSE
The (describe item of evidence) has now been received into evidence. It has been admitted only [for the purpose of (describe purpose) ] [as to (name party) ]. You may consider it only [for that purpose] [as it might affect (name party) ]. You may not consider that evidence [for any other purpose] [as to [any other party] [ (name other party(s) ].
301.6 JURY TO BE GUIDED BY OFFICIAL ENGLISH TRANSLATION/INTERPRETATION

Introduction:

The law requires that the court appoint a qualified interpreter to assist a witness who does not readily speak or understand the English language in testifying. The interpreter does not work for either side in this case. [He] [She] is completely neutral in the matter and is here solely to assist us in communicating with the witness. [He][She] will repeat only what is said and will not add, omit, or summarize anything. The interpreter in this case is (name of interpreter). The oath will now be administered to the interpreter.

Oath to Interpreter:

Do you solemnly swear or affirm that you will make a true interpretation to the witness of all questions or statements made to [him][her] in a language which that person understands, and interpret the witness’s statements into the English language, to the best of your abilities [so help you God]?

*302
Foreign Language Testimony:

You are about to hear testimony of a witness who will be testifying in (language used). This witness will testify through the official court interpreter. Although some of you may know (language used), it is important that all jurors consider the same evidence. Therefore, you must accept the English translation of the witness’s testimony. You must disregard any different meaning.
If, however, during the testimony there is a question as to the accuracy of the English interpretation, you should bring this matter to my attention immediately by raising your hand. You should not ask your question or make any comment about the interpretation in the presence of the other jurors, or otherwise share your question or concern with any of them. I will take steps to see if your question can be answered and any discrepancy resolved. If, however, after such efforts a discrepancy remains, I emphasize that you must rely only upon the official English interpretation as provided by the court interpreter and disregard any other contrary interpretation.
NOTE ON USE FOR 301.6
This instruction should be given to the jury immediately before the testimony of a witness who will be testifying through the services of an official court interpreter. Compare United States v. Franco, 136 F.3d 622, 626 (9th Cir.1998) (jury properly instructed that it must accept translation of foreign-language tape-recording when accuracy of translation is not in issue); United States v. Fuentes-Montijo, 68 F.3d 352, 355-56 (9th Cir.1995).
301.7 JURY TO BE GUIDED BY OFFICIAL ENGLISH TRANSCRIPT OF RECORDING IN FOREIGN LANGUAGE (ACCURACY NOT IN DISPUTE)
You are about to listen to a tape recording in (language used). Each of you has been given a transcript of the recording which has been admitted into evidence. The transcript is a translation of the foreign language tape recording.
Although some of you may know (language used), it is important that all jurors consider the same evidence. Therefore, you must accept the English translation contained in the transcript and disregard any different meaning.
If, however, during the testimony there is a question as to the accuracy of the English translation, you should bring this matter to my attention immediately by raising your hand. You should not ask your question or make any comment about the translation in the presence of the other jurors, or otherwise share your question or concern with any of them. I will take steps to see if your question can be answered and any discrepancy resolved. If, however, after such efforts a discrepancy remains, I emphasize that you must rely only upon the official English translation as provided by the court interpreter and disregard any other contrary translation.
NOTE ON USE FOR 301.7
This instruction is appropriate immediately prior to the jury hearing a tape-recorded conversation in a foreign language if the accuracy of the translation is not an issue. See, e.g., United States v. Franco, 136 F.3d 622, 626 (9th Cir.1998); United States v. Fuentes-Montijo, 68 F.3d 352, 355-56 (9th Cir.1995).
*303 301.8JURY TO BE GUIDED BY OFFICIAL ENGLISH TRANSLATION/INTERPRETATION — TRANSCRIPT OF RECORDING IN FOREIGN LANGUAGE (ACCURACY IN DISPUTE)
You are about to listen to a tape recording in (language used). Each of you has been given a transcript of the recording. The transcripts were provided to you by [the plaintiff] [the defendant] so that you could consider the content of the recordings. The transcript is an English translation of the foreign language tape recording.
Whether a transcript is an accurate translation, in whole or in part, is for you to decide. In considering whether a transcript accurately describes the meaning of a conversation, you should consider the testimony presented to you regarding how, and by whom, the transcript was made. You may consider the knowledge, training, and experience of the translator, as well as the nature of the conversation and the reasonableness of the translation in light of all the evidence in the case. You should not rely in any way on any knowledge you may have of the language spoken on the recording; your consideration of the transcripts should be based on the evidence introduced in the trial.
NOTE ON USE FOR 301.8
This instruction is appropriate immediately prior to the jury hearing a tape-recorded conversation in a foreign language if the accuracy of the translation is an issue. See, e.g., United States v. Jordan, 223 F.3d 676, 689 (7th Cir.2000). See also Seventh Circuit Federal Criminal Jury Instructions § 3.18.
301.9 DISREGARD STRICKEN MATTER
NOTE ON USE FOR 301.9
No standard instruction is provided. The court should give an instruction that is appropriate to the circumstances. In drafting a curative instruction, the court must decide on a measured response that will do more good than harm, going no further than necessary. The language of curative instructions should be carefully selected so as not to punish a party or attorney.
301.10 INSTRUCTION BEFORE RECESS
NOTE ON USE FOR 301.10
No standard instruction is provided. The jury should be given an appropriate reminder in advance of any recess.
SECTION 400 — SUBSTANTIVE INSTRUCTIONS
NOTE ON USE
These substantive instructions should be followed by the applicable sections from Damages, Substantive Instructions — General, and Closing Instructions (Before Final Argument).
These instructions are numbered 416 (as a series) to not conflict with the instructions already numbered 401 through 415 by the Florida Supreme Court Committee on Standard Jury Instructions in Civil Cases.
416.1 BREACH OF CONTRACT-INTRODUCTION
(Claimant) claims that [he] [she] [it] and (defendant) entered into a contract for (insert brief summary of alleged contract).
*304 (Claimant) claims that (defendant) breached this contract by (briefly state alleged breach), and that the breach resulted in damages to (claimant).
(Defendant) denies (insert denial of any of the above claims). (Defendant) also claims (insert affirmative defense).
NOTE ON USE FOR 416.1
This instruction is intended to introduce the jury to the issues involved in the case. It should be read before the instructions on the substantive law.
416.2 THIRD-PARTY BENEFICIARY
(Claimant) is not a party to the contract. However, (claimant) may be entitled to damages for breach of the contract if [he][she][it] proves that (insert names of the contracting parties) intended that (claimant) benefit from their contract.
It is not necessary for (claimant) to have been named in the contract. In deciding what (insert names of the contracting parties) intended, you should consider the contract as a whole, the circumstances under which it was made, and the apparent purpose the parties were trying to accomplish.
SOURCES AND AUTHORITIES FOR 416.2
See Restatement (Second) of ContRacts § 302 (1981):
[A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and ... the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
While the Supreme Court has not commented directly on the applicability of the Restatement (Second) of Contracts § 302 (1981) (but note Justice Shaw’s partial concurrence in Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277, 280-81 (Fla.1985)), all five district courts of appeal have cited the Restatement (Second) of Contracts § 302 (1981). Civix Sunrise, GC, LLC v. Sunrise Road Maintenance Assn., Inc., 997 So.2d 433 (Fla. 2d DCA 2008); Technicable Video Systems, Inc. v. Americable of Greater Miami, Ltd., 479 So.2d 810 (Fla. 3d DCA 1985); Cigna Fire Underwriters Ins. Co. v. Leonard, 645 So.2d 28 (Fla. 4th DCA 1994); Warren v. Monahan Beaches Jewelry Center, Inc., 548 So.2d 870 (Fla. 1st DCA 1989); Publix Super Markets, Inc. v. Cheesbro Roofing, Inc., 502 So.2d 484 (Fla. 5th DCA 1987). See also A.R. Moyer, Inc. v. Graham, 285 So.2d 397, 402 (Fla.1973), and Carvel v. Godley, 939 So.2d 204, 207-208 (Fla. 4th DCA 2006) (“The question of whether a contract was intended for the benefit of a third person is generally regarded as one of construction of the contract. The intention of the parties in this respect is determined by the terms of the contract as a whole, construed in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish.”).
416.3 CONTRACT FORMATION-ESSENTIAL FACTUAL ELEMENTS
(Claimant) claims that the parties entered into a contract. To prove that a contract was created, (claimant) must prove all of the following:
1. The essential contract terms were clear enough that the parties could understand what each was required to do;
2. The parties agreed to give each other something of value. [A promise *305 to do something or not to do something may have value]; and
3. The parties agreed to the essential terms of the contract. When you examine whether the parties agreed to the essential terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was an agreement. The making of a contract depends only on what the parties said or did. You may not consider the parties’ thoughts or unspoken intentions.

Note: If neither offer nor acceptance is contested, then element #3 should not be given.

If (Claimant) did not prove all of the above, then a contract was not created.
NOTE ON USE FOR 416.3
This instruction should be given only when the existence of a contract is contested. If both parties agree that they had a contract, then the instructions relating to whether a contract was actually formed would not need to be given. At other times, the parties may be contesting only a limited number of contract formation issues. Also, some of these issues may be decided by the judge as a matter of law. Users should omit elements in this instruction that are not contested so that the jury can focus on the contested issues. Read the bracketed language only if it is an issue in the case.
SOURCES AND AUTHORITIES FOR 416.3
1.The general rule of contract formation was enunciated by the Florida Supreme Court in St. Joe Corp. v. McIver, 875 So.2d 375, 381 (Fla.2004) (“An oral contract ... is subject to the basic requirements of contract law such as offer, acceptance, consideration and sufficient specification of essential terms.”).
2. The first element of the instruction refers to the definiteness of essential terms of the contract. “The definition of ‘essential term’ varies widely according to the nature and complexity of each transaction and is evaluated on a case-by-case basis.” Lanza v. Damian Carpentry, Inc., 6 So.3d 674, 676 (Fla. 1st DCA 2009). See also Leesburg Community Cancer Center v. Leesburg Regional Medical Center, 972 So.2d 203, 206 (Fla. 5th DCA 2007) (“We start with the basic premise that no person or entity is bound by a contract absent the essential elements of offer and acceptance (its agreement to be bound to the contract terms), supported by consideration.”).
3. The second element of the instruction requires giving something of value. In Florida, to constitute valid consideration there must be either a benefit to the promisor or a detriment to the promisee. Mangus v. Present, 135 So.2d 417, 418 (Fla.1961). The detriment necessary for consideration need not be an actual loss to the promisee, but it is sufficient if the promisee does something that he or she is not legally bound to do. Id.
4. The final element of this instruction requires an objective test. “[A]n objective test is used to determine whether a contract is enforceable.” Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla.1985). The intention as expressed controls rather than the intention in the minds of the parties. “The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs-not on the parties having meant the same thing but on their having said the same thing.” Gendzier v. Bielecki, 97 So.2d 604, 608 (Fla.1957).
*306 416.4 BREACH OF CONTRACT-ESSENTIAL FACTUAL ELEMENTS
To recover damages from (defendant) for breach of contract, (claimant) must prove all of the following:
1. (Claimant) and (defendant) entered into a contract;
2. (Claimant) did all, or substantially all, of the essential things which the contract required [him][her][it] to do [or that [he][she][it] was excused from doing those things];
3. [All conditions required by the contract for (defendant’s) performance had occurred;]
4. [ (Defendant) failed to do something essential which the contract required [him][her][it] to do] [ (Defendant) did something which the contract prohibited [him][her][it] from doing and that prohibition was essential to the contract]; and

Note: If the allegation is that the defendant breached the contract by doing something that the contract prohibited, use the second option.

5. (Claimant) was harmed by that failure.
NOTE ON USE FOR 416.4
In many cases, some of the above elements may not be contested. In those cases, users should delete the elements that are not contested so that the jury can focus on the contested issues.
SOURCES AND AUTHORITIES FOR 416.4
1.An adequately pled breach of contract action requires three elements: (1) a valid contract; (2) a material breach; and (3) damages. Friedman v. New York Life Ins. Co., 985 So.2d 56, 58 (Fla. 4th DCA 2008). This general rule was enunciated by various Florida district courts of appeal. See Murciano v. Garcia, 958 So.2d 423, 423-24 (Fla. 3d DCA 2007); Abbott Laboratories, Inc. v. General Elec. Capital, 765 So.2d 737, 740 (Fla. 5th DCA 2000); Mettler, Inc. v. Ellen Tracy, Inc., 648 So.2d 253, 255 (Fla. 2d DCA 1994); Knowles v. C. I. T. Corp., 346 So.2d 1042, 1043 (Fla. 1st DCA 1977).
2. To maintain an action for breach of contract, a claimant must first establish performance on the claimant’s part of the contractual obligations imposed by the contract. Marshall Construction, Ltd. v. Coastal Sheet Metal & Roofing, Inc., 569 So.2d 845, 848 (Fla. 1st DCA 1990). A claimant is excused from establishing performance if the defendant anticipatorily repudiated the contract. Hosp. Mortg. Grp. v. First Prudential Dev. Corp., 411 So.2d 181, 182-83 (Fla.1982). Repudiation constituting a prospective breach of contract may be evidenced by words or voluntary acts but refusal must be distinct, unequivocal and absolute. Mori v. Matsushita Elec. Corp. of Am., 380 So.2d 461, 463 (Fla. 3d DCA 1980).
3. “Substantial performance is performance ‘nearly equivalent to what was bargained for.’ ” Strategic Resources Grp., Inc. v. Knight-Ridder, Inc., 870 So.2d 846, 848 (Fla. 3d DCA 2003). “Substantial performance is that performance of a contract which, while not full performance, is so nearly equivalent to what was bargained for that it would be unreasonable to deny the promisee the full contract price subject to the promisor’s right to recover whatever damages may have been occasioned him by the promisee’s failure to render full performance.” Ocean Ridge Dev. Corp. v. Quality Plastering, Inc., 247 So.2d 72, 75 (Fla. 4th DCA 1971).
*307 4. The doctrine of substantial performance applies when the variance from the contract specifications is inadvertent or unintentional and unimportant so that the work actually performed is substantially what was called for in the contract. Lockhart v. Worsham, 508 So.2d 411, 412 (Fla. 1st DCA 1987). “In the context of contracts for construction, the doctrine of substantial performance is applicable only where the contractor has not willfully or materially breached the terms of his contract or has not intentionally failed to comply with the specifications.” National Constructors, Inc. v. Ellenberg, 681 So.2d 791, 793 (Fla. 3d DCA 1996).
5. “There is almost always no such thing as ‘substantial performance’ of payment between commercial parties when the duty is simply the general one to pay.” Hufcor/Gulfstream, Inc. v. Homestead Concrete & Drainage, Inc., 831 So.2d 767, 769 (Fla. 4th DCA 2002).
416.5 ORAL OR WRITTEN CONTRACT TERMS
[Contracts may be written or oral.]
[Contracts may be partly written and partly oral.]
Oral contracts are just as valid as written contracts.
NOTE ON USE FOR 416.5
Give the bracketed alternative that is most applicable to the facts of the case. If the complete agreement is in writing, this instruction should not be given.
SOURCES AND AUTHORITIES FOR 416.5
1.An “agreement, partly written and partly oral, must be regarded as an oral contract, the liability arising under which is not founded upon an instrument of writing.” Johnson v. Harrison Hardware Furniture Co., 119 Fla. 470, 160 So. 878, 879 (1935).
2. An oral contract is subject to the basic requirements of contract law such as offer, acceptance, consideration, and sufficient specification of essential terms. St. Joe Corp. v. McIver, 875 So.2d 375, 381 (Fla.2004).
3. “The complaint alleged the execution of an oral contract, the obligation thereby assumed, and a breach. It therefore set forth sufficient facts which taken as true, would state a cause of action for breach of contract.” Perry v. Cosgrove, 464 So.2d 664, 667 (Fla. 2d DCA 1985).
4. As long as an essential ingredient is not missing from an agreement, courts have been reluctant to hold contracts unenforceable on grounds of uncertainty, especially where one party has benefited from the other’s reliance. Gulf Solar, Inc. v. Westfall, 447 So.2d 363 (Fla. 2d DCA 1984); Community Design Corp. v. Antonell, 459 So.2d 343 (Fla. 3d DCA 1984). When the existence of a contract is clear, the jury may properly determine the exact terms of an oral contract. Perry v. Cosgrove, 464 So.2d 664, 667 (Fla. 2d DCA 1985).
5. “To state a cause of action for breach of an oral contract, a plaintiff is required to allege facts that, if taken as true, demonstrate that the parties mutually assented to ‘a certain and definite proposition’ and left no essential terms open.” W.R. Townsend Contracting, Inc. v. Jensen Civil Construction, Inc., 728 So.2d 297 (Fla. 1st DCA 1999). See also Carole Korn Interiors, Inc. v. Goudie, 573 So.2d 923 (Fla. 3d DCA 1990) (company which provided interior design services sufficiently alleged cause of action for breach of oral contract, when company alleged that: it had entered into oral contract with defendants for interior design services; compa *308 ny had provided agreed services; defendants breached contract by refusing to remit payment; and company suffered damages); Rubenstein v. Primedica Healthcare, Inc., 755 So.2d 746, 748 (Fla. 4th DCA 2000) (“In this case, appellant sufficiently pled that Primedica, upon acquiring Shapiros’ assets, which included their oral agreement with appellant, mutually assented to appellant’s continued employment under the same terms and conditions as with Shapiro. Further, he alleged that he suffered damages as a result of his termination.”).
416.6 CONTRACT IMPLIED IN FACT
Contracts can be created by the conduct of the parties, without spoken or written words. Contracts created by conduct are just as valid as contracts formed with words.
Conduct will create a contract if the conduct of both parties is intentional and each knows, or under the circumstances should know, that the other party will understand the conduct as creating a contract.
In deciding whether a contract was created, you should consider the conduct and relationship of the parties as well as all of the circumstances.
NOTE ON USE FOR 416.6
Use this instruction where there is no express contract, oral or written, between the parties, and the jury is being asked to infer the existence of a contract from the facts and circumstances of the case.
SOURCES AND AUTHORITIES FOR 416.6
1.“[A]n implied contract is one in which some or all of the terms are inferred from the conduct of the parties and the circumstances of the case, though not expressed in words.” 17A AmJüR. 2d Contracts § 12 (2009).
2. “In a contract implied in fact the assent of the parties is derived from other circumstances, including their course of dealing or usage of trade or course of performance.” Rabon v. Inn of Lake City, Inc., 693 So.2d 1126, 1181 (Fla. 1st DCA 1997); McMillan v. Shively, 23 So.3d 830, 831 (Fla. 1st DCA 2009).
3. In Commerce Partnership 8098 Limited Partnership v. Equity Contracting Co., 695 So.2d 383, 387 (Fla. 4th DCA 1997), the Fourth District held:
A contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties’ conduct, not solely from their words.” 17 Am.Jur. 2d Contracts § 3 (1964); Cor-bin, Corbin on Contracts §§ 1.18-1.20 (Joseph M. Perillo ed. 1993). When an agreement is arrived at by words, oral or written, the contract is said to be “express.” 17 Am.Jur. 2d Contracts § 3. A contract implied in fact is not put into promissory words with sufficient clarity, so a fact finder must examine and interpret the parties’ conduct to give definition to their unspoken agreement. Id.; Corbin on Contracts § 562 (1960). It is to this process of defining an enforceable agreement that Florida courts have referred when they have indicated that contracts implied in fact “rest upon the assent of the parties.” Policastro v. Myers, 420 So.2d 324, 326 (Fla. 4th DCA 1982); Tipper v. Great Lakes Chemical Co., 281 So.2d 10, 13 (Fla.1973). The supreme court described the mechanics of this process in Bromer v. Florida Power & Light Co., 45 So.2d 658, 660 (Fla.1950):
[A] [cjourt should determine and give to the alleged implied contract *309 “the effect which the parties, as fair and reasonable men, presumably would have agreed upon if, having in mind the possibility of the situation which has arisen, they had contracted expressly thereto.” 12 AmJur. 2d 766.
See Mecier v. Broadfoot, 584 So.2d 159, 161 (Fla. 1st DCA 1991).
Common examples of contracts implied in fact are when a person performs services at another’s request, or “where services are rendered by one person for another without his expressed request, but with his knowledge, and under circumstances” fairly raising the presumption that the parties understood and intended that compensation was to be paid. Lewis v. Meginniss [30 Fla. 419], 12 So. 19, 21 (Fla.1892); Tipper, 281 So.2d at 13. In these circumstances, the law implies the promise to pay a reasonable amount for the services. Lewis, 12 So. at 21; Lamoureux v. Lamoureux, 59 So.2d 9, 12 (Fla.1951); A.J. v. State, 677 So.2d 935, 937 (Fla. 4th DCA 1996); Dean v. Blank, 267 So.2d 670 (Fla. 4th DCA 1972); Solutec Carp. v. Young & Lawrence Associates, Inc., 243 So.2d 605, 606 (Fla. 4th DCA 1971).
[[Image here]]
For example, a common form of contract implied in fact is where one party has performed services at the request of another without discussion of compensation. These circumstances justify the inference of a promise to pay a reasonable amount for the service. The enforceability of this obligation turns on the implied promise, not on whether the defendant has received something of value. A contract implied in fact can be enforced even where a defendant has received nothing of value.
416.7 CONTRACT IMPLIED IN LAW
(Claimant) claims that (defendant) owes [him][her][it] money for (insert brief summary of allegations). To establish this claim, (claimant) must prove all of the following:
1. (Claimant) gave a benefit to (defendant);
2. (Defendant) knew of the benefit;
3. (Defendant) accepted or retained the benefit; and
4. The circumstances are such that (defendant) should, in all fairness, be required to pay for the benefit.
SOURCES AND AUTHORITIES FOR 416.7
1. “To describe the cause of action encompassed by a contract implied in law, Florida courts have synonymously used a number of different terms — quasi contract, unjust enrichment, restitution, constructive contract, and quantum meruit.” Commerce Partnership 8098 Limited Partnership v. Equity Contracting Co., 695 So.2d 383, 386 (Fla. 4th DCA 1997) (internal quotations and footnotes omitted). However, a contract implied in law “is not based upon the finding, by a process of implication from the facts, of an agreement between the parties. A contract implied in law is a legal fiction, an obligation created by the law without regard to the parties’ expression of assent by their words or conduct. The fiction was adopted to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation.” Id. “The elements of a cause of action for a quasi contract are that: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred *310 and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. Because the basis for recovery does not turn on the finding of an enforceable agreement, there may be recovery under a contract implied in law even where the parties had no dealings at all with each other.” Id. (internal citations omitted).
2. The committee has drafted this instruction because a claim to establish a contract implied in law may be a claim in equity for the court to decide or a claim at law for a jury to decide. See Della Ratta v. Della Ratta, 927 So.2d 1055, 1060 n. 2 (Fla. 4th DCA 2006) (“In Florida, all implied contract actions, including unjust enrichment, were part of the action of as-sumpsit, which was an action at law under the common law. Although some Florida courts have described quasi contracts as being ‘equitable in nature,’ the term has been used in the sense of ‘fairness,’ to describe that quality which makes an enrichment unjust, and not as a .reference to the equity side of the court.”) (internal citations omitted).
416.8 CONTRACT FORMATION-OFFER
Both an offer and an acceptance are required to create a contract. (Defendant) contends a contract was not created because there was never any offer. To establish that an offer was made, (claimant) must prove:
1. (Claimant) communicated to (defendant) that [he][she][it] was willing to enter into a contract with (defendant);
2. The communication[s] contained the essential terms of the offer; and
3. Based on the communication, (defendant) could have reasonably concluded that a contract with these terms would result if [he][she][it] accepted the offer.
If (claimant) did not prove all of the above, then no offer was made and no contract was created.
NOTE ON USE FOR 416.8
Do not give this instruction unless the defendant has testified or offered other evidence in support of his or her contention. This instruction assumes that the defendant is alleging that the claimant never made an offer. Change the identities of the parties in the indented paragraphs if, under the facts of the case, the roles of the parties are switched (e.g., if defendant was the alleged offeror). If the existence of an offer is not contested, then this instruction is unnecessary.
SOURCES AND AUTHORITIES FOR 416.8
1. The court in Lee County v. Pierpont, 693 So.2d 994 (Fla. 2d DCA 1997), defined “offer” as follows: “A proposal to do a thing or pay an amount, usually accompanied by an expected acceptance, counter-offer, return promise or act. A manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.” Id. at 996 (citation omitted).
2. “The rule that it is possible for parties to make an enforceable contract binding them to prepare and execute a subsequent agreement is well recognized. However, if the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; and the so-called ‘contract to make a contract’ is not a contract at all.” John I. Moss, Inc. v. Cobbs Co., 198 So.2d 872, 874 (Fla. 3d DCA 1967).
*311 3. In Socarras v. Claughton Hotels, Inc., 374 So.2d 1057, 1060 (Fla. 3d DCA 1979), the court found that a “handwritten note evidences only [the defendant’s] willingness to negotiate a contract with potential purchasers who might be interested in the general terms that he outlined. The note did not incorporate all of the essential terms necessary to make an enforceable contract for the sale of the land. It reflected only the state of negotiations at that point, preliminary negotiations which never ripened into a formal agreement.”
416.9 CONTRACT FORMATION-REVOCATION OF OFFER
Both an offer and an acceptance are required to create a contract. (Defendant) contends that the offer was withdrawn before the offer was accepted. To establish that the offer was not withdrawn, (claimant) must prove one of the following:
1. (Defendant) did not withdraw the offer; or
2. (Claimant) accepted the offer before (defendant) withdrew it; or
3. (Defendant’s) withdrawal of the offer was never communicated to (claimant).
If (claimant) did not prove any of the above, then the offer was withdrawn and no contract was created.
NOTES ON USE FOR 416.9
1. Do not give this instruction unless the defendant has testified or offered other evidence to support this contention.
2. This instruction assumes that the defendant is claiming to have revoked the offer. Change the identities of the parties in the indented paragraphs if, under the facts of the case, the roles of the parties are switched (e.g., if the defendant was the alleged offeree).
SOURCES AND AUTHORITIES FOR 416.9
1. “A mere offer not assented to constitutes no contract, for there must be not only a proposal, but an acceptance thereof. So long as a proposal is not acceded to, it is binding upon neither party, and it may be retracted.” Gibson v. Courtois, 539 So.2d 459, 460 (Fla.1989).
2. “In the United States, the law is virtually uniform that a revocation requires communication and that an acceptance prior to a communicated revocation constitutes a binding contract.” Lance v. Martinez-Arango, 251 So.2d 707, 709 (Fla. 3d DCA 1971).
3. “Where an offer has not been accepted by the offeree, the offeror may revoke the offer provided the communication of such revocation is received prior to acceptance.” Kendel v. Pontious, 244 So.2d 543, 544 (Fla. 3d DCA 1971).
416.10 CONTRACT FORMATION-ACCEPTANCE
Both an offer and acceptance are required to create a contract. (Defendant) contends that a contract was not created because the offer was never accepted. To establish acceptance of the offer, (claimant) must prove (defendant) communicated [his][her][its] agreement to the terms of the offer.
[If (defendant) agreed only to certain conditions, or if [he][she][it] introduced a new term into the bargain, then there was no acceptance.]
NOTES ON USE FOR 416.10
1. Do not give this instruction unless the defendant has testified or offered other *312 evidence in support of the defendant’s contention.
2. This instruction assumes that the defendant has denied accepting the claimant’s offer. Change the identities of the parties in the indented paragraphs if, under the facts of the case, the roles of the parties are switched (e.g., if defendant was the alleged offeror).
SOURCE AND AUTHORITY FOR 416.10
The general rule is that an acceptance is not valid, and thus is ineffective to form a contract, unless it is communicated to the offeror. Kendel v. Pontious, 261 So.2d 167, 169-70 (Fla.1972).
416.11 CONTRACT FORMATION-ACCEPTANCE BY SILENCE OR CONDUCT
Ordinarily, if a party does not say or do anything in response to another party’s offer, then [he][she][it] has not accepted the offer. However, if (claimant) proves that [both [he][she][it] and (defendant) understood silence or inaction to mean that the offer was accepted] [the benefits of the offer were accepted] [ (offeree) had a legal duty to speak from a past relationship between (claimant) and (defendant), (claimant’s and (defendant’s previous dealings, or (identify other circumstances creating a legal duty to speak) ], then there was an acceptance.
NOTES ON USE FOR 416.11
1. This instruction should be read in conjunction with and immediately after Instruction 416.10, Contract Formation — Acceptance if acceptance by silence is an issue.
2. Pending further development of the law, the committee takes no position as to what “other circumstances” create a legal duty to speak. The committee does not consider the factors listed to be exclusive and, if the court determines that the jury may consider “other circumstances,” the court should modify this instruction.
SOURCES AND AUTHORITIES FOR 416.11
1. “[A]n offeree who does any act inconsistent with the offeror’s ownership of offered property is bound in accordance with the offered terms. In addition, such an exercise of dominion even though not intended as acceptance ... is a sufficient manifestation of assent....” Stevenson v. Stevenson, 661 So.2d 367, 369 (Fla. 4th DCA 1995) (citing Restatement (Second) of Contracts § 69(2) and comment (e), and Scocozzo v. General Dev. Corp., 191 So.2d 572, 579 (Fla. 4th DCA 1966)).
2. Section 69 of the Restatement (Second) of Contracts states that if an offeree fails to reply to an offer, his or her silence and inaction operate as an acceptance in the following cases only:
(1) if an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation;
(2) if the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer; or
(3) if, because of previous dealings or otherwise, it is reasonable that the offer-ee should notify the offeror if he or she does not intend to accept.
3. An offeree’s silent acceptance of benefits from the offeror constitutes acceptance. See Hendricks v. Stark, 99 Fla. 277, 126 So. 293, 297 (1930) (“It has been repeatedly held that a person by the ac *313 ceptance of benefits, may be estopped from questioning the validity and effect of a contract; and, where one has an election to ratify or disaffirm a conveyance, he can either claim under or against it, but he cannot do both, and, having adopted one course with knowledge of the facts, he cannot afterwards pursue the other.”).
416.12 SUBSTANTIAL PERFORMANCE
(Defendant) claims that (claimant) did not perform all of the essential things which the contract required, and therefore (defendant) did not have to perform [his][her][its] obligations under the contract. To defeat this claim, (claimant) must prove both of the following:
1. (Claimant) performed in good faith; and
2. (Claimant’s) performance was so nearly equivalent to what was bargained for that it would be unreasonable to deny [him] [her] [it] the full contract price less an appropriate reduction, if any, for (claimant’s) failure to fully perform.
NOTE ON USE FOR 416.12
The measure of any reduction referred to in element 2 should be addressed in the damages instructions.
SOURCES AND AUTHORITIES FOR 416.12
1. “There is almost always no such thing as ‘substantial performance’ of payment between commercial parties when the duty is simply the general one to pay. Payment is either made in the amount and on the date due, or it is not.” Enriquillo Export & Import, Inc. v. M.B.R. Indus., Inc., 733 So.2d 1124, 1127 (Fla. 4th DCA 1999).
2. “Substantial performance is that performance of a contract which, while not full performance, is so nearly equivalent to what was bargained for that it would be unreasonable to deny the promisee the full contract price subject to the promisor’s right to recover whatever damages may have been occasioned him by the promis-ee’s failure to render full performance.” Ocean Ridge Dev. Corp. v. Quality Plastering, Inc., 247 So.2d 72, 75 (Fla. 4th DCA 1971).
416.13 MODIFICATION
(Claimant) claims that the original contract was modified, or changed. (Defendant) denies that the contract was modified. Therefore, (Claimant) must prove that the parties agreed to the modification.
The parties to a contract may agree to modify its terms. You must decide whether a reasonable person would conclude from the words and conduct of (claimant) and (defendant) that they agreed to modify the contract. You cannot consider the parties’ hidden intentions.
A contract in writing may be modified by a contract in writing, by a subsequent oral agreement between the parties, or by the parties’ subsequent conduct [, if the modified agreement has been accepted and acted upon by the parties in such a manner as would work a fraud on either party to refuse to enforce it].
SOURCES AND AUTHORITIES FOR 416.13
1. In St. Joe Corporation v. McIver, 875 So.2d 375 (Fla.2004), our Supreme Court said:
It is well established that the parties to a contract can discharge or modify the contract, however made or evi *314 denced, through a subsequent agreement. Whether the parties have validly-modified a contract is usually a question of fact.
Under Florida law, the parties’ subsequent conduct also can modify the terms in a contract. We note, however, that a party cannot modify a contract unilaterally. All the parties whose rights or responsibilities the modification affects must consent.
Id. at 381-82 (internal citations omitted).
2. The parol evidence rule does not bar the introduction of evidence of a subsequent oral contract modifying a written agreement. H.I. Resorts, Inc. v. Touchton, 337 So.2d 854, 856 (Fla. 2d DCA 1976).
3. “A written contract or agreement may be altered or modified by an oral agreement if the latter has been accepted and acted upon by the parties in such a manner as would work a fraud on either party to refuse to enforce it ... An oral modification under these circumstances is permissible even though there was in the written contract a provision prohibiting its alteration except in writing.” Professional Ins. Corp. v. Cahill, 90 So.2d 916, 918 (Fla.1956).
4. “[T]he actions of the parties may be considered as a means of determining the interpretation that they themselves have placed upon the contract.” Lalow v. Codorno, 101 So.2d 390 (Fla.1958).
5. “A written contract can be modified by subsequent oral agreement between the parties or by the parties’ course of dealing ... Whether a written contract has been modified by subsequent oral agreement or by course of dealing is a question of fact for the jury.” Kiwanis Club of Little Havana, Inc. v. de Kalafe, 723 So.2d 838, 841 (Fla. 3d DCA 1998).
416.14 INTERPRETATION-DISPUTED TERM(S)
(Claimant) and (defendant) dispute the meaning of the following term(s) contained in their contract: (insert text of term(s)).
(Claimant) claims that the term(s) means: (insert claimant’s interpretation of the term(s)). (Defendant) claims that the term(s) means: (insert defendant’s interpretation of the term(s)). (Claimant) must prove that [his][her][its] interpretation of the term(s) is correct.
In deciding what the term(s) of a contract mean, you must decide what the parties agreed to at the time the contract was created.
In order to determine what the parties agreed to, you should consider the plain and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract. The agreement of the parties is determined only by what the parties said, wrote, or did. You may not consider the parties’ thoughts or unspoken intentions.

Note: The following instruction should be given if the court is going to give additional instructions related to disputed term(s).

[I will now instruct you on other methods that you should use in resolving the dispute over term(s) in the contract:]
NOTE ON USE FOR 416.14
Read any of Instructions 416.15 through 416.20 (as appropriate) on tools for interpretation after reading the last bracketed sentence. The instructions on interpretation are not exhaustive and the court may give any additional instruction on interpretation applicable to the facts and circum *315 stances of the particular case provided it is supported by Florida law.
SOURCES AND AUTHORITIES FOR 416.14
1. The interpretation of a contract is normally a matter of law that is determined by the court. Smith v. State Farm Mut. Auto. Ins. Co., 231 So.2d 193, 194 (Fla.1970); Strama v. Union Fidelity Life Ins. Co., 793 So.2d 1129, 1132 (Fla. 1st DCA 2001). Under certain circumstances, however, such as when the terms of a contract are ambiguous or susceptible to different interpretations, an issue of fact is presented which should be submitted to the jury. First Nat’l Bank of Lake Park v. Gay, 694 So.2d 784, 788 (Fla. 4th DCA 1997); State Farm Fire & Cas. Co. v. De Londono, 511 So.2d 604, 605 (Fla. 3d DCA 1987). “The initial determination of whether the contract term is ambiguous is a question of law for the court, and, if the facts of the case are not in dispute, the court will also be able to resolve the ambiguity as a matter of law.” Strama, 793 So.2d at 1132; Ellenwood v. Southern United Life Ins. Co., 373 So.2d 392, 394 (Fla. 1st DCA 1979).
2. In Florida, an objective test is used to determine the agreement of the parties. Fivecoat v. Publix Super Markets, Inc., 928 So.2d 402, 403 (Fla. 1st DCA 2006). The agreement of the parties “is ascertained from the language used in the instrument and the objects to be accomplished .... ” Rylander v. Sears Roebuck & Co., 302 So.2d 478, 479 (Fla. 3d DCA 1974); Jones v. Treasure, 984 So.2d 634, 638 (Fla. 4th DCA 2008). When determining the agreement of the parties, a court need not consider whether or not the parties reached a subjective meeting of the minds as to the terms of a contract. Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla. 1985). “The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs — not on the parties having meant the same thing but on their having said the same thing.” Id. (quoting Gendzier v. Bielecki, 97 So.2d 604, 608 (Fla.1957)). Accordingly, the plain meaning of the language used by the parties controls as the best indication of the parties’ agreement. SPP Real Estate (Grand Bay), Inc. v. Joseph J. Portuondo, P.A., 756 So.2d 182, 184 (Fla. 3d DCA 2000). Thus, the terms in a contract should be interpreted in accordance with their plain and ordinary meaning. Kel Homes, LLC v. Burris, 933 So.2d 699, 702 (Fla. 2d DCA 2006).
3.The norms of contractual interpretation may vary in certain areas of the law. For example, although the existence of an ambiguous contractual term typically creates an issue of fact as to the intent of the parties which should be resolved by the jury, this principle of law is not applicable to contracts between contractors and subcontractors with regard to risk-shifting provisions. DEC Elec., Inc. v. Raphael Constr. Corp., 558 So.2d 427, 428-29 (Fla.1990). In such instances, the intention of the parties may be determined from the written contract as a matter of law because the nature of the transaction makes it appropriate for a court to resolve the apparent ambiguity. Id. “The reason is that the relationship between the parties is a common one and usually their intent will not differ from transaction to transaction, although it may be differently expressed.” Id. at 429. The norms of contractual interpretation also do not apply to insurance contracts, as ambiguities are always to be construed against the insurer and in favor of coverage.
*316 416.15 INTERPRETATION-MEANING OF ORDINARY WORDS
You should assume that the parties intended the disputed term(s) in their contract to have their plain and ordinary meaning, unless you decide that the parties intended the disputed term(s) to have another meaning.
NOTE ON USE FOR 416.15
The phrase “plain and ordinary” is used throughout the charge to describe the meaning of words. The Committee found no distinction between the phrases “usual and customary” and “plain and ordinary” as those phrases are used in case law. The Committee chooses to use the phrase “plain and ordinary” in the instruction because the phrase is more commonly used.
SOURCES AND AUTHORITIES FOR 416.15
1. This principle is well-established under Florida law. Hamilton Constr. Co. v. Bd. of Pub. Instruction of Dade Cnty., 65 So.2d 729, 731 (Fla.1953); Langley v. Owens, 52 Fla. 302, 42 So. 457, 460 (1906); Winn-Dixie Stores, Inc. v. 99 Cent Stuff-Trail Plaza, LLC, 811 So.2d 719, 722 (Fla. 3d DCA 2002); Institutional & Supermarket Equipment, Inc. v. C & S Refrigeration, Inc., 609 So.2d 66, 68 (Fla. 4th DCA 1992); Bingemann v. Bingemann, 551 So.2d 1228, 1231 (Fla. 1st DCA 1989).
2. Plain and ordinary meaning is often described as the meaning of words as found in the dictionary. Beans v. Chohonis, 740 So.2d 65, 67 (Fla. 3d DCA 1999). Also, plain and ordinary meaning is the natural meaning that is most commonly understood in relation to the subject matter and circumstances of the case. Sheldon v. Tiernan, 147 So.2d 167, 169 (Fla. 2d DCA 1962).
416.16 INTERPRETATION — MEANING OF DISPUTED TECHNICAL OR SPECIAL WORDS
Disputed term(s) in the contract should be given the meaning used by people in that trade, business, or technical field unless the parties agree that the disputed term(s) should have another meaning.
SOURCES AND AUTHORITIES FOR 416.16
1. Contractual terms should be construed in accordance with their plain and ordinary meaning unless the parties intended the contractual terms to have a different or special meaning. Madson v. Madson, 636 So.2d 759, 761 (Fla. 2d DCA 1994).
2. Contracts may be written in light of established custom or trade usage in an industry, and contracts involving such transactions should be interpreted in light of such custom or trade usage. The responsibility for determining trade usage is customarily one for the jury. Fred S. Conrad Construction Co. v. Exchange Bank of St. Augustine, 178 So.2d 217, 221 (Fla. 1st DCA 1965).
3. Extrinsic evidence may be admitted to explain technical terminology even if the contract is unambiguous. NCP Lake Power, Inc. v. Florida Power Corp., 781 So.2d 531, 536 (Fla. 5th DCA 2001).
4. Evidence showing the meaning of technical terms is not an exception to the parol evidence rule because it does not vary or contradict the written instrument, but merely places the fact finder in the position of the parties when the contract was made. Southeast Banks Trust Co., N.A. v. Higginbotham Chevrolet-Oldsmobile, Inc., 445 So.2d 347, 348-49 (Fla. 5th DCA 1984).
*317 416.17INTERPRETATION — CONSTRUCTION OF CONTRACT AS A WHOLE
In deciding what the disputed term(s) of the contract mean, you should consider the whole contract, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.
SOURCES AND AUTHORITIES FOR 416.17
1. “In reviewing the contract in an attempt to determine its true meaning, the court must review the entire contract without fragmenting any segment or portion.” J.C. Penney Co., Inc. v. Koff, 345 So.2d 732, 735 (Fla. 4th DCA 1977).
2. Every provision in a contract should be given meaning and effect and apparent inconsistencies reconciled if possible. Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 941 (Fla.1979); Royal Am. Realty, Inc. v. Bank of Palm Beach & Trust Company, 215 So.2d 336 (Fla. 4th DCA 1968); Transport Rental Systems, Inc. v. Hertz Carp., 129 So.2d 454 (Fla. 3d DCA 1961).
3. “We rely upon the rule of construction requiring courts to read provisions of a contract harmoniously in order to give effect to all portions thereof.” City of Homestead v. Johnson, 760 So.2d 80, 84 (Fla.2000). See also Sugar Cane Growers Cooperative of Fla., Inc. v. Pinnock, 735 So.2d 530, 535 (Fla. 4th DCA 1999) (holding contracts should be interpreted to give effect to all provisions); Paddock v. Bay Concrete Indus., Inc., 154 So.2d 313, 315 (Fla. 2d DCA 1963) (“All the various provisions of a contract must be so construed, if it can reasonably be done, as to give effect to each.”).
416.18 INTERPRETATION-CONSTRUCTION BY
CONDUCT
In deciding what the disputed term(s) of the contract mean, you should consider how the parties acted before and after the contract was created.
SOURCES AND AUTHORITIES FOR 416.18
In the face of ambiguity on an issue, a jury is free to look at the subsequent conduct of the parties to determine the parties’ intent and the contract’s meaning. See Rafael J. Roca, P.A. v. Lytal, Reiter, Clark, Roca, Fountain & Williams, 856 So.2d 1, 5 (Fla. 4th DCA 2003) (“Where an agreement is ambiguous, the meaning of the agreement may be ascertained by looking to the interpretation the parties have given the agreement and the parties’ conduct throughout their course of dealings.”); Mayflower Corp. v. Davis, 655 So.2d 1134, 1137 (Fla. 1st DCA 1994) (“Courts have also looked to the conduct of the parties throughout their course of dealings to determine their intentions and the meaning of the agreement.”).
416.19 INTERPRETATION-REASONABLE TIME
If a contract does not state a specific time within which a party is to perform a requirement of the contract, then the party must perform the requirement within a reasonable time. What is a reasonable time depends on the facts of each case, including the subject matter and purpose of the contract and the expressed intent of the parties at the time they entered into the contract.
SOURCES AND AUTHORITIES FOR 416.19
1. Whenever a contract fails to provide a specific time for performance, the law *318 implies a reasonable time for performance. Patrick v. Kirkland, 58 Fla. 768, 43 So. 969, 971 (1907); De Cespedes v. Bolanos, 711 So.2d 216, 218 (Fla. 3d DCA 1998); Fleming v. Burbach Radio, Inc., 377 So.2d 723, 724 (Fla. 4th DCA 1980).
2. The decision of what constitutes a reasonable time for performance is ordinarily a question of fact for the jury or fact-finder. L.P. Sims v. Am. Hardware Mut. Ins. Co., 429 So.2d 21, 22 (Fla. 2d DCA 1982).
3. The determination of what constitutes a reasonable time for performance depends on the facts of each case, such as the subject matter of the contract, the situation of the parties, and the parties’ agreement when they entered into the contract. Sound City, Inc. v. Kessler, 316 So.2d 315, 317 (Fla. 1st DCA 1975); Cocoa Props., Inc. v. Commonwealth Land Title Ins. Co., 590 So.2d 989, 991 (Fla. 2d DCA 1991); Sharp v. Machry, 488 So.2d 133, 137 (Fla. 2d DCA 1986).
416.20 INTERPRETATION-CONSTRUCTION AGAINST DRAFTER
You must first attempt to determine the meaning of the ambiguous term(s) in the contract from the evidence presented and the previous instructions. If you cannot do so, only then should you consider which party drafted the disputed term(s) in the contract and then construe the language against that party.
NOTES ON USE FOR 416.20
1.This instruction endeavors to explain to the jury that this principle should be secondary to the consideration of other means of interpretation, principally the consideration of parol evidence that may explain the parties’ intent at the time they entered into the contract. See W. Yellow Pine Co. v. Sinclair, 83 Fla. 118, 90 So. 828, 831 (1922) (the rule to construe against the drafter should not be used if other rules of construction reach the intent of the parties); The School Bd. of Broward Cnty. v. The Great Am. Ins. Co., 807 So.2d 750 (Fla. 4th DCA 2002) (the rule to construe against the drafter is a secondary rule of interpretation and should be used as a last resort when all ordinary interpretive guides have been exhausted); DSL Internet Corp. v. TigerDirect, Inc., 907 So.2d 1203, 1205 (Fla. 3d DCA 2005) (the against-the-drafter rule is a rule of last resort and is inapplicable if there is evidence of the parties’ intent). There is a risk that the jury may place too much emphasis on this rule, to the exclusion of evidence and other approaches; therefore, this instruction should be given with caution.
2. The Committee has been unable to find case law authority applying this principle when the contract contains language stating the contract will not be interpreted against the drafter. If the contract at issue or an applicable statute provides that the contract will not be construed against the drafter, the Committee would suggest that this be taken into consideration before this instruction is used, particularly given the secondary rule of interpretation principle expressed in the preceding paragraph and established Florida law that every provision in a contract should be given meaning and effect. See Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 941 (Fla.1979) (holding that every provision in a contract should be given meaning); see also section 542.335(l)(h), Florida Statutes (providing an example in the context of not construing a restrictive covenant against the drafter).
3. The Committee strongly recommends the use of this instruction in con *319 nection with a verdict form that clarifies, by special interrogatory, what the term or phrase is that the court has declared to be ambiguous. See First Nat’l Bank of Lake Park v. Gay, 694 So.2d 784, 789 (Fla. 4th DCA 1997) (discussing that interrogatory verdict forms should track the same issues and defenses in the jury instructions).
SOURCES AND AUTHORITIES FOR 416.20
1. The existence of this interpretation principle is well established. “An ambiguous term in a contract is to be construed against the drafter.” City of Homestead v. Johnson, 760 So.2d 80, 84 (Fla.2000). “Generally, ambiguities are construed against the drafter of the instrument.” Hurt v. Leatherby Ins. Co., 380 So.2d 432, 434 (Fla.1980). “[A] provision in a contract will be construed most strongly against the party who drafted it ...” Sol Walker & Co. v. Seaboard Coast Line R.R. Co., 362 So.2d 45, 49 (Fla. 2d DCA 1978). Where the language of contract is ambiguous or doubtful, it should be construed against the party who drew the contract and chose the wording. Vienneau v. Metropolitan Life Ins. Co., 548 So.2d 856 (Fla. 4th DCA 1989); Am. Agronomics Corp. v. Ross, 309 So.2d 582 (Fla. 3d DCA 1975). “To the extent any ambiguity exists in the interpretation of [a] contract, it will be strictly construed against the drafter.” Goodwin v. Blu Murray Ins. Agency, Inc., 939 So.2d 1098 (Fla. 5th DCA 2006); Russell v. Gill, 715 So.2d 1114 (Fla. 1st DCA 1998).
2. If only one party drafted a contract, then the jury should consider that party to be the drafter in the context of this instruction. However, if more than one party contributed to drafting a contract, provision, or term, then the jury should consider the drafter to be the party that actually chose the wording at issue. Finberg v. Herald Fire Ins. Co., 455 So.2d 462 (Fla. 3d DCA 1984); Bacon v. Karr, 139 So.2d 166 (Fla. 2d DCA 1962). An additional tool the jury can utilize to determine who is the drafter is they can interpret the language at issue against the party which benefits from the language. Belen School, Inc. v. Higgins, 462 So.2d 1151 (Fla. 4th DCA 1984); Watson v. Poe, 203 So.2d 14 (Fla. 4th DCA 1967).
416.21 EXISTENCE OF CONDITIONS PRECEDENT DISPUTED
(Defendant) claims that the contract with (claimant) provides that [he][she][it] was not required to (insert duty) unless (insert condition precedent).
(Defendant) must prove that the parties agreed to this condition. If (defendant) proves this, then (claimant) must prove that (insert condition precedent) [was performed] [occurred] [was waived].
If (claimant) does not prove that (insert condition precedent) [was performed] [occurred] [was waived], then (defendant) was not required to (insert duty).
NOTES ON USE FOR 416.21
1. This instruction should be given only where both the existence and the occurrence of a condition precedent are disputed. If only the occurrence of a condition precedent is disputed, use Instruction 416.22 Occurrence of Agreed Condition Precedent.
2. If the issue of waiver arises, the court should define waiver as set forth in Instruction 416.30 Affirmative Defense— Waiver.
*320 SOURCES AND AUTHORITIES FOR 416.21
1. “A condition precedent is an act or event, other than a lapse of time, that must occur before a binding contract will arise.... A condition may be either a condition precedent to the formation of a contract or a condition precedent to performance under an existing contract.” Mitchell v. DiMare, 936 So.2d 1178, 1180 (Fla. 5th DCA 2006).
2. “Provisions of a contract will only be considered conditions precedent or subsequent where the express wording of the disputed provision conditions formation of a contract and or performance of the contract on the completion of the conditions.” Gunderson v. Sch. Dist. of Hillsborough Cnty., 937 So.2d 777, 779 (Fla. 1st DCA 2006).
3. In pleading, the performance or occurrence of a condition precedent may be alleged generally, but a denial of the performance or occurrence of a condition precedent shall be made specifically and with particularity. Fla. R. Civ. P. 1.120(c). When a claimant alleges generally the occurrence of a condition precedent, and the defendant fails to deny the occurrence with particularity, then the defendant has no right to demand proof from the claimant of the occurrence of such condition. See Cooke v. Ins. Co. of N. Am., 652 So.2d 1154, 1156 (Fla. 2d DCA 1995); Scarborough Assocs. v. Financial Federal Savings & Loan Ass’n of Dade Cnty., 647 So.2d 1001, 1004 (Fla. 3d DCA 1994). However, once the defendant has made a specific denial of a condition precedent to a contract, the burden reverts to the claimant to prove the satisfaction of the condition precedent. Griffin v. Am. Gen. Life Accident Ins. Co., 752 So.2d 621, 623 n. 1 (Fla. 2d DCA 1999).
416.22 OCCURRENCE OF AGREED CONDITION PRECEDENT
The parties agreed in their contract that (defendant) would not have to (insert duty) unless (insert condition precedent). (Defendant) contends that this condition did not occur and that [he][she][it] did not have to (insert duty). To overcome this contention, (claimant) must prove that (insert condition precedent) [was performed] [occurred] [was waived].
If (claimant) does not prove that (insert condition precedent) [was performed] [occurred] [was waived], then (defendant) was not required to (insert duty).
NOTES ON USE FOR 416.22
1. If both the existence and the occurrence of a condition precedent are disputed, use Instruction 416.21 Existence of Conditions Precedent Disputed.
2. If the issue of waiver arises, the court should define waiver as set forth in Instruction 416.30 Affirmative Defense— Waiver.
SOURCES AND AUTHORITIES FOR 416.22
In pleading, the performance or occurrence of a condition precedent may be alleged generally, but a denial of the performance or occurrence of a condition precedent shall be made specifically and with particularity. Fla. R. Civ. P. 1.120(c). When a claimant alleges generally the occurrence of a condition precedent, and the defendant fails to deny the occurrence with particularity, then the defendant has no right to demand proof from the claimant of the occurrence of such condition. See Cooke v. Ins. Co. of N. Am., 652 So.2d 1154, 1156 (Fla. 2d DCA 1995); Scarborough Assocs. v. Financial Federal Savings & Loan Ass’n of Dade Cnty., 647 So.2d 1001, 1004 (Fla. 3d DCA 1994). However, *321 once the defendant has made a specific denial of a condition precedent to a contract, the burden reverts to the claimant to prove the satisfaction of the condition precedent. Griffin v. Am. Gen. Life Accident Ins. Co., 752 So.2d 621, 623 n. 1 (Fla. 2d DCA 1999).
416.23 ANTICIPATORY BREACH
(Claimant) claims that (defendant) an-ticipatorily breached the contract between the parties.
To establish this claim, (claimant) must prove both of the following:
1. (Defendant) breached the contract by clearly and positively indicating, by words or conduct, or both, that [he][she][it] would not or could not perform the contract; and
2. (Claimant) was willing and able to perform the contract at the time (defendant) breached the contract.
SOURCES AND AUTHORITIES FOR 416.23
1. “Where performances are to be exchanged under an exchange of promises, one party’s repudiation of a duty to render performance discharges the other party’s remaining duties to render performance.” Hosp. Mortg. Grp. v. First Prudential Dev. Corp., 411 So.2d 181, 182 (Fla.1982) (quoting Restatement (Second) of Contracts § 253 (1979)).
2. “[Repudiation may be evidenced by words or voluntary acts but the refusal must be distinct, unequivocal, and absolute.” Mori v. Matsushita Elec. Corp. of Am., 380 So.2d 461, 463 (Fla. 3d DCA 1980).
3. “[T]he non-breaching party is required to plead and prove compliance with all conditions precedent or the ability to comply if the performance has been excused by the repudiation.” Hosp. Mortg. Grp., 411 So.2d at 183. But see Custer Med. Ctr. v. United Auto. Ins. Co., 62 So.3d 1086, 1096 (Fla.2010) (“[A] defending party’s assertion that a plaintiff has failed to satisfy conditions precedent necessary to trigger contractual duties under an existing agreement is generally viewed as an affirmative defense, for which the defensive pleader has the burden of pleading and persuasion.”); Fla. R. Civ. P. 1.120(c) (“In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity.”).
416.24 BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
In the contract in this case, there is an implied promise of good faith and fair dealing. This means that neither party will do anything to unfairly interfere with the right of any other party to the contract to receive the contract’s benefits; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the contract’s terms. (Claimant) contends that (defendant) violated the duty to act in good faith and fairly under [a] specific part[s] of the contract. To establish this claim, (claimant) must prove all of the following:
1. (Claimant) and (defendant) entered into a contract;
2. (Claimant) did all, or substantially all, of the significant things that the contract required [him][her][it] to do [or that [he][she][it] was excused from having to do those things];
3. All conditions required for (defendant’s) performance had occurred;
*322 4. (Defendant’s) actions [or omissions] unfairly interfered with (claimant’s) receipt of the contract’s benefits;
5. (Defendant’s) conduct did not comport with (claimant’s) reasonable contractual expectations under [a] specific part(s) of the contract; and
6. (Claimant) was harmed by (defendant’s) conduct.
NOTE ON USE FOR 416.24
The question of whether a particular contract is one in which an implied covenant of good faith and fair dealing applies is a question for the trial court to answer in the first instance.
SOURCES AND AUTHORITIES FOR 416.24
1. The implied covenant of good faith and fair dealing exists in virtually all contractual relationships. Sepe v. City of Safety Harbor, 761 So.2d 1182, 1184 (Fla. 2d DCA 2000); Restatement (Second) of Contracts § 205 (1981).
2. The purpose of the implied covenant of good faith is “to protect the reasonable expectations of the contracting parties.” Ins. Concepts & Design, Inc. v. Healthplan Services, Inc., 785 So.2d 1232, 1234-35 (Fla. 4th DCA 2001). See also Cox v. CSX Intermodal, Inc., 732 So.2d 1092, 1097 (Fla. 1st DCA 1999) (“[T]he implied covenant of good faith and fair dealing is designed to protect the contracting parties’ reasonable expectations.”).
3. The implied covenant of good faith “is a gap filling default rule” which comes into play “when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards.” Speedway SuperAmerica, LLC v. Tropic Enterprises, Inc., 966 So.2d 1, 3 n. 2 (Fla. 2d DCA 2007); see also Cox, 732 So.2d at 1097.
4. “Because the implied covenant is not a stated contractual term, to operate it attaches to the performance of a specific or express contractual provision.” Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 896 So.2d 787, 792 (Fla. 2d DCA 2005).
5. The implied covenant of good faith cannot override an express contractual provision. Snow, 896 So.2d at 791-92; see also Ins. Concepts, 785 So.2d at 1234.
6. “The implied obligation of good faith cannot be used to vary the terms of an express contract.” City of Riviera Beach v. John’s Towing, 691 So.2d 519, 521 (Fla. 4th DCA 1997); see also Ins. Concepts, 785 So.2d at 1234-35 (“Allowing a claim for breach of the implied covenant of good faith and fair dealing ‘where no enforceable executory contractual obligation’ remains would add an obligation to the contract that was not negotiated by the parties.”) (citations omitted).
7. Good faith means honesty, in fact, in the conduct of contractual relations. Burger King Corp. v. C.R. Weaver, 169 F.3d 1310, 1315 (11th Cir.1999) (citing Harrison Land Dev. Inc. v. R & H Holding Co., 518 So.2d 353, 355 (Fla. 4th DCA 1987)); see also Restatement (Second) of Contracts § 205 cmt. a (1981).
416.25 AFFIRMATIVE DEFENSE-MUTUAL MISTAKE OF FACT
(Defendant) claims that [he][she][it] should be able to set aside the contract because the parties were mistaken about (insert description of mistake). To establish this defense, (defendant) must prove the following:
1. The parties were mistaken about (insert description of mistake); and
*323 2. (Defendant) did not bear the risk of mistake. A party bears the risk of a mistake when
[the parties’ agreement assigned the risk to [him][her][it]]*
[or]
[[he][she][it] was aware, at the time the contract was made, that [he][she][it] had only limited knowledge about the facts relating to the mistake but decided to proceed with the contract].**
* The court should give the first option only if the court finds that the contract is ambiguous regarding whether the contract assigns the risk to the defendant.
** The court should give the second option only if there is competent, substantial evidence that, at the time the contract was made, the defendant had only limited knowledge with respect to the facts relating to the mistake but treated the limited knowledge as sufficient.
NOTES ON USE FOR 416.25
1. The court should not give this instruction if it determines that the alleged mistake was not material.
2. The court should not give this instruction if it finds that the contract unambiguously assigns the risk to the defendant or if the court assigns the risk of mistake to the defendant on the ground that it is reasonable under the circumstances to do so.
SOURCES AND AUTHORITIES FOR 416.25
1. “A party may avoid a contract by proving mutual mistake regarding a basic assumption underlying the contract. However, to prevail on this basis the party must also show he did not bear the risk of mistake.” Leff v. Ecker, 972 So.2d 965, 966 (Fla. 3d DCA 2007) (citation omitted).
2. “A party bears the risk of a mistake when (a) the risk is allocated to him by agreement of the parties or (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.” Rawson v. UMLIC VP, L.L.C., 933 So.2d 1206, 1210 (Fla. 1st DCA 2006) (quoting Restatement (Second) of Contracts § 154 (1979)).
416.26 AFFIRMATIVE DEFENSE-UNILATERAL MISTAKE OF FACT
(Defendant) claims that [he][she][it] should be able to set aside the contract because [he][she][it] was mistaken about (insert description of mistake). To establish this defense, (defendant) must prove all of the following:
1. (Defendant) was mistaken about (insert description of mistake) at the time the parties made the contract;
2. [The effect of the mistake is such that enforcement of the contract would be unconscionable]
[or]
[ (Claimant) had reason to know of the mistake or [he][she][it] caused the mistake.]
and
3. (Defendant) did not bear the risk of mistake. A party bears the risk of a mistake when
[the parties’ agreement assigned the risk to [him][her][it]]*
[or]
[[he][she][it] was aware, at the time the contract was made, that [he] [she] [it] had only limited knowledge about the facts relating to the mistake but decided to proceed with the contract].**
*324 * The court should give the first option only if the court finds that the contract is ambiguous regarding whether the contract assigns the risk to the defendant.
** The court should give the second option only if there is competent, substantial evidence that, at the time the contract was made, the defendant had only limited knowledge with respect to the facts relating to the mistake but treated the limited knowledge as sufficient.
NOTES ON USE FOR 416.26
1. The court should not give this instruction if it determines that the alleged mistake was not material.
2. The court should not give this instruction if it finds that the contract unambiguously assigns the risk to the defendant or if the court assigns the risk of mistake to the defendant on the ground that it is reasonable under the circumstances to do so.
SOURCES AND AUTHORITIES FOR 416.26
1. A contract may be “set aside on the basis of unilateral mistake unless (a) the mistake is the result of an inexcusable lack of due care or (b) the other party has so changed its position in reliance on the contract that rescission would be unconscionable.” BMW of N. Am. v. Krathen, 471 So.2d 585, 588 (Fla. 4th DCA 1985) (citing Maryland Cas. Co. v. Krasnek, 174 So.2d 541 (Fla.1965); Orkin Exterminating Co. v. Palm Beach Hotel Condo. Ass’n, Inc., 454 So.2d 697 (Fla. 4th DCA 1984); Pennsylvania Nat’l Mutual Cas. Ins. Co., v. Anderson, 445 So.2d 612 (Fla. 3d DCA 1984)).
2. Sections 153 and 154 of the Restatement (Second) of Contracts (1979) provide:
§ 153. When Mistake of One Party Makes a Contract Voidable.
Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the eon-tract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and
(a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or
(b) the other party had reason to know of the mistake or his fault caused the mistake.
§ 154. When a Party Bears the Risk of a Mistake.
A party bears the risk of a mistake when
(a) the risk is allocated to him by agreement of the parties, or
(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
(e) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.
416.27 AFFIRMATIVE DEFENSE-UNDUE INFLUENCE
(Defendant) claims that [he][she][it] should be able to set aside the contract because (claimant) unfairly pressured [him] [her] [it] into agreeing to the contract. To establish this defense, (defendant) must prove both of the following:
1. (Claimant) used [a relationship of trust and confidence] [or] [ (defendant’s weakness of mind] [or] [ (defendant’s needs or distress] to control, persuade, or pressure (defendant) into agreeing to the contract; and
2. (Defendant) would not otherwise have voluntarily agreed to the contract.
*325 SOURCES AND AUTHORITIES FOR 416.27
1. “Undue influence must amount to over-persuasion, duress, force, coercion, or artful or fraudulent contrivances to such a degree that there is a destruction of free agency and willpower.” Jordan v. Noll, 423 So.2d 368, 370 (Fla. 1st DCA 1982).
2. “[M]ere weakness of mind, unaccompanied by any other inequitable incident, if the person has sufficient intelligence to understand the nature of the transaction and is left to act upon his own free will, is not a sufficient ground to set aside an agreement.” Donnelly v. Mann, 68 So.2d 584, 586 (Fla.1953) (citations omitted).
3. “To constitute ‘undue influence’ the mind ... must be so controlled or affected by persuasion or pressure, artful or fraudulent contrivances, or by the insidious influences of persons in close confidential relations with him, that he is not left to act intelligently, understanding^, and voluntarily, but ... subject to the will or purposes of another.” Peacock v. Du Bois, 90 Fla. 162, 105 So. 321, 322 (1925) (citation omitted).
416.28 AFFIRMATIVE DEFENSE-FRAUD
To establish the defense of fraud, (defendant) must prove all of the following:
1. (Claimant) represented that (insert alleged fraudulent statement) and that representation was material to the transaction;
2. (Claimant) knew that the representation was false;
3. (Claimant) made the representation to persuade (defendant) to agree to the contract;
4. (Defendant) relied on the representation; and
5. (Defendant) would not have agreed to the contract if [he][she][it] had known that the representation was false.
On this defense, (Defendant) may rely on a false statement, even though its falsity could have been discovered if (defendant) had made an investigation. However, (defendant) may not rely on a false statement if [he][she][it] knew it was false or its falsity was obvious to [him][her][it]. In making this determination, you should consider the totality of the circumstances surrounding the type of information transmitted, the nature of the communication between the parties, and the relative positions of the parties.
SOURCES AND AUTHORITIES FOR 416.28
1. Fraud must be pled as an affirmative defense or it is waived. Cocoves v. Campbell, 819 So.2d 910, 912 (Fla. 4th DCA 2002); Peninsular Fla. Dist. Council of Assemblies of God v. Pan Am. Inv. & Dev. Corp., 450 So.2d 1231, 1232 (Fla. 4th DCA 1984); Ash Chem., Inc. v. Dep’t of Envtl. Regulation, 706 So.2d 362, 363 (Fla. 5th DCA 1998).
2. In order to raise an affirmative defense of fraud, the “pertinent facts and circumstances constituting fraud must be pled with specificity, and all the essential elements of fraudulent conduct must be stated.” Zikofsky v. Robby Vapor Systems, Inc., 846 So.2d 684, 684 (Fla. 4th DCA 2003) (citation omitted).
3. The party seeking to use the defense of fraud must specifically identify misrepresentations or omissions of fact. Cocoves v. Campbell, 819 So.2d 910, 912-13 (Fla. 4th DCA 2002).
4. Fraud must be pled with particularity. Cocoves v. Campbell, 819 So.2d 910, *326 913 (Fla. 4th DCA 2002); Thompson v. Bank of New York, 862 So.2d 768 (Fla. 4th DCA 2003).
5. Mere statements of opinion are insufficient to constitute the defense of fraud. Thompson v. Bank of New York, 862 So.2d 768, 769 (Fla. 4th DCA 2003); Carefree Vills. Inc. v. Keating Props., Inc., 489 So.2d 99, 102 (Fla. 2d DCA 1986).
6. The elements of fraudulent misrepresentation are: “(1) a false statement concerning a material fact; (2) the repre-sentor’s knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.” Butler v. Yusem, 44 So.3d 102, 105 (Fla.2010).
7. “Justifiable reliance is not a necessary element of fraudulent misrepresentation.” Butler v. Yusem, 44 So.3d 102, 105 (Fla.2010).
416.29 AFFIRMATIVE DEFENSE-NEGLIGENT MISREPRESENTATION
The committee recognizes that some authority exists suggesting that negligent misrepresentation can be asserted as an affirmative defense to a breach of contract claim. See Rocky Creek Retirement Properties, Inc. v. The Estate of Virginia B. Fox, 19 So.3d 1105, 1110 (Fla. 2d DCA 2009). However, the law supporting this defense has not been sufficiently developed to enable the committee to propose an instruction on this defense. Pending further development in the law, the committee takes no position on this issue.
416.30 AFFIRMATIVE DEFENSE-WAIVER
(Defendant) claims that [he][she][it] did not have to (insert description of performance) because (claimant) gave up [his][her][its] right to have (defendant) perform [this] [these] obligation[s]. This is called a “waiver.”
To establish this defense, (defendant) must prove all of the following:
1. (Claimant’s) right to have (defendant) (insert description of performance) actually existed;
2. (Claimant) knew or should have known [he][she][it] had the right to have (defendant) (insert description of performance); and
3. (Claimant) freely and intentionally gave up [his][her][its] right to have (defendant) (insert description of performance).
A waiver may be oral or written or may arise from conduct which shows that (claimant) gave up that right.
If (defendant) proves that (claimant) gave up [his][her][its] right to have (defendant) (insert description of performance), then (defendant) was not required to perform [this] [these] obligation[s].
SOURCES AND AUTHORITIES FOR 416.30
1. “Waiver” is the voluntary and intentional relinquishment of a known right. Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla.2005); Bueno v. Workman, 20 So.3d 993, 998 (Fla. 4th DCA 2009); Winans v. Weber, 979 So.2d 269, 274 (Fla. 2d DCA 2007).
2. The elements necessary to establish waiver are: the existence of a right, privilege, or advantage; the actual or constructive knowledge thereof; and an intention to relinquish that right, privilege, or advantage. Bueno v. Workman, 20 So.3d 993, 998 (Fla. 4th DCA 2009); Winans v. Weber, 979 So.2d 269, 274 (Fla. 2d DCA 2007).
*327 3. There can be no waiver if the party against whom the waiver is invoked did not know all of the material facts, or was misled about the material facts. Winans v. Weber, 979 So.2d 269, 274 (Fla. 2d DCA 2007); L.R. v. Dep’t of Children & Families, 822 So.2d 527, 530 (Fla. 4th DCA 2002).
4. Proof of the elements of waiver may be express or implied from conduct or acts that lead a party to believe a right has been waived. Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla.2005); LeNeve v. Via S. Fla., L.L.C., 908 So.2d 530, 535 (Fla. 4th DCA 2005).
416.31 AFFIRMATIVE DEFENSE-NOVATION
To establish the defense of novation, (defendant) must prove that all parties agreed, by words or conduct, to cancel the original contract and to substitute a new contract in its place.
NOTE ON USE FOR 416.31
If necessary, Instruction 416.3 (Contract Formation — Essential Factual Elements) should be read in whole or in part at this point to address the issue of formation of the new contract.
416.32 AFFIRMATIVE DEFENSE-STATUTE OF LIMITATIONS
On the defense of statute of limitations, the issue for you to decide is whether (claimant) filed [his][her][its] claim (describe claim as to which statute of limitations defense has been raised) within the time set by law.
To establish this defense, (defendant) must prove that any breach of contract, if one in fact occurred, occurred before (insert date four or five years before date of filing suit).
NOTE ON USE FOR 416.32
The delayed discovery doctrine has not been applied to breach of contract actions in Florida. See Medical Jet, S.A. v. Signature Flight Support-Palm Beach, Inc., 941 So.2d 576, 578 (Fla. 4th DCA 2006) (“The supreme court rejected an expansion of the delayed discovery doctrine in Davis v. Monahan, 832 So.2d 708 (Fla.2002).”).
SOURCES AND AUTHORITIES FOR 416.32
1. Section 95.11(2)(b), Florida Statutes (2011), provides that “[a] legal or equitable action on a contract, obligation or liability founded on a written instrument [other than for the recovery of real property], except for an action to enforce a claim against a payment bond, which shall be governed by the applicable provisions of ss. 255.05(1) and 713.23(l)(e)” shall be commenced within five years, (emphasis added).
2. Section 95.11(3)(k), Florida Statutes (2011), provides that “[a] legal or equitable action on a contract, obligation or liability not founded on a written instrument [other than for the recovery of real property], including an action for the sale and delivery of goods, wares, and merchandise, and on store accounts” shall be commenced within four years, (emphasis added).
3. In a breach of contract action, “it is well-established that a statute of limitations runs from the time of the breach,” BDI Const. Co. v. Hartford Fire Ins. Co., 995 So.2d 576, 578 (Fla. 3d DCA 2008), “not from the time when consequential damages result or become ascertained,” Medical Jet, S.A. v. Signature Flight Support—Palm Beach, Inc., 941 So.2d 576, 578 (Fla. 4th DCA 2006).
*328 416.33AFFIRMATIVE DEFENSE-EQUITABLE ESTOPPEL
(Defendant) has raised the defense of equitable estoppel. To establish this defense, (defendant) must prove all of the following:
1. [(Claimant) took action by (describe material action) ]
[ (Claimant) spoke about (describe material fact) ]
[ (Claimant) concealed or was silent about (describe material fact) at a time when [he][she][it] knew of [that fact] [those facts]];
2. (Defendant) relied in good faith upon (claimant’s) [action] [words] [inaction] [silence]; and
3. (Defendant’s) reliance on (claimant’s) [action] [words] [inaction] [silence] caused (defendant) to change [his][her][its] position for the worse.
NOTE ON USE FOR 416.33
The court should not give this instruction if it determines that the alleged action, words, inaction, or silence was not material.
SOURCES AND AUTHORITIES FOR 416.33
1. “The elements of equitable estoppel are (1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon.” State v. Harris, 881 So.2d 1079, 1084 (Fla.2004).
2. “[I]n order to work an estoppel, silence must be under such circumstances that there are both a specific opportunity and a real apparent duty to speak.” Thomas v. Dickinson, 158 Fla. 819, 30 So.2d 382, 384 (1947).
3. “The ‘representation’ upon which an estoppel may be predicated may consist of words, conduct, or, if there is a duty to speak, silence.” Lloyds Underwriters at London v. Keystone Equipment Finance Corp., 25 So.3d 89, 93 (Fla. 4th DCA 2009) (citations omitted).
4. “The conduct ... such as to create an estoppel ... necessary to a waiver consists of willful or negligent words and admissions, or conduct, acts and acquiescence causing another to believe in a certain state of things by which such other person is or may be induced to act to his prejudice. The acts or conduct need not be positive, but can consist of failure to act or, more particularly, failure to speak when under some duty to speak.” Richards v. Dodge, 150 So.2d 477, 481 (Fla. 2d DCA 1963) (internal citations omitted).
416.34[RESERVED FOR FUTURE USE]
416.35 AFFIRMATIVE DEFENSE-JUDICIAL ESTOPPEL
The committee has not drafted an instruction for the affirmative defense of judicial estoppel because judicial estoppel is an equitable doctrine which a court is to determine. See Blumberg v. USAA Cas. Ins. Co., 790 So.2d 1061, 1066 (Fla.2001) (“Judicial estoppel is an equitable doctrine that is used to prevent litigants from taking totally inconsistent positions in separate judicial, including quasi-judicial, proceedings.” (citation omitted)).
416.36 AFFIRMATIVE DEFENSE-RATIFICATION
(Defendant) has raised the defense of ratification. To establish this defense, (defendant) must prove all of the following:
*329 1. (Defendant) performed [an act] [a transaction] which breached the contract;
2. (Claimant) knew of the [act] [transaction];
3. (Claimant) knew that [he][she][it] could reject the contract because of the [act] [transaction]; and
4. (Claimant) [accepted the [act] [transaction]] [expressed [his][her][its] intention to accept the [act] [transaction]].
SOURCES AND AUTHORITIES FOR 416.36
1. “An agreement is deemed ratified where the principal has full knowledge of all material facts and circumstances relating to the unauthorized act or transaction at the time of the ratification. An affirmative showing of the principal’s intent to ratify the act in question is required.” Frankenmuth Mut. Ins. Co. v. Magaha, 769 So.2d 1012, 1022 (Fla.2000) (citations omitted).
2. “[W]here a party seeking rescission has discovered grounds for rescinding an agreement and either remains silent when he should speak or in any manner recognizes the contract as binding upon him, ratifies or accepts the benefits thereof, he will be held to have waived his right to rescind.” AVVA-BC, LLC v. Amiel, 25 So.3d 7, 11 (Fla. 3d DCA 2009) (citation and internal quotations omitted).
416.37 GOODS SOLD AND DELIVERED
(Claimant) claims that (defendant) owes [him][her][it] money for goods which (claimant) sold and delivered to (defendant). To establish this claim, (claimant) must prove all of the following:
1. (Claimant) sold and delivered goods to (defendant);
2. (Defendant) failed to pay for such goods; and
3. [The price agreed upon for] [The reasonable value of] the goods which (claimant) sold and delivered to (defendant).
If the greater weight of the evidence does not support (claimant’s) claim on these issues, then your verdict should be for (defendant). However, if the greater weight of the evidence supports (claimant’s) claims on these issues, then your verdict should be for (claimant) in the total amount of [his][her][its] damages.
SOURCES AND AUTHORITIES FOR 416.37
1. “[T]he plaintiff was bound to prove the sale and delivery and the price agreed upon for the [goods], or their value. The sale could be proved by the delivery, from which the sale is presumed or implied.”. Chase & Co. v. Miller, 81 Fla. 472, 88 So. 312, 314 (1921).
2. “[T]he plaintiff failed to prove that it delivered certain [goods] to defendant’s [place of business] and as such, no prima facie case for goods sold and delivered was established.” Bosem v. A.R.A. Corp., 350 So.2d 526, 527 (Fla. 3d DCA 1977).
3. “[A] claim on an open account requires proof of a sales contract between the creditor and debtor, and proof that the amount claimed by the creditor represents either the agreed upon sales price or the reasonable value of the goods actually delivered .... [I]t is clear that a claimant also must prove delivery of goods and show either an agreement upon sales price or that amounts claimed represent the reasonable value of the goods actually delivered.” Alderman Interior Sys., Inc. v. *330 First National-Heller Factors, Inc., 376 So.2d 22, 24 (Fla. 2d DCA 1979).
4. Fla. R. Civ. P. 1.935 (Form) (“Defendant owes plaintiff $(amount) that is due with interest since (date), for the following goods sold and delivered by plaintiff to defendant between (date) and (date): (list goods and prices).”).
5. Fla. Sm. Cl. R. Form 7.331 (“There is now due, owing, and unpaid from defendant to plaintiff $(amount) with interest since (date), for the following goods sold and delivered by plaintiff to defendant between (date) and (date): (list goods and prices and any credits).”).
416.38 OPEN ACCOUNT
(Claimant) claims that (defendant) owes [him][her][it] money on an open account. An open account is an unsettled debt arising from [items of work and labor] [goods sold and delivered] where the parties have had [a transaction] [transactions] between them and expected to conduct further transactions. To establish this claim, (claimant) must prove all of the following:
1. (Claimant) and (defendant) had [a transaction] [transactions] between them;
2. An account existed between (claimant) and (defendant) in which the parties had a series of charges, payments, adjustments;
3. (Claimant) prepared an itemized statement of the account; and
4. (Defendant) owes money on the account.
If the greater weight of the evidence does not support (claimant’s) claim on these issues, then your verdict should be for (defendant). However, if the greater weight of the evidence supports (claimant’s) claim on these issues, [then your verdict should be for (claimant) in the total amount of [his][her][its] damages] [then you shall consider the [defense] [defenses] raised by (defendant) ].
SOURCES AND AUTHORITIES FOR 416.38
1. “[A]n open account is an unsettled debt arising from items of work and labor, with the expectation of further transactions subject to future settlements and adjustment. In order to state a valid claim on an open account, the claimant must attach an itemized copy of the account.” Farley v. Chase Bank, U.S.A., N.A., 37 So.3d 936, 937 (Fla. 4th DCA 2010) (citations and quotations omitted).
2. “An account opened is an unsettled debt arising from items of work and labor, with the expectation of further transactions subject to future settlements and adjustment.” S. Motor Co. of Dade Cnty. v. Accountable Const. Co., 707 So.2d 909, 912 (Fla. 3d DCA 1998).
3. “An action to recover on an open account is essentially an action to collect on a debt created by a series of credit transactions. One party to the account agrees to sell goods or services on credit and the other assumes the obligation to make payment. These duties do not change merely because the parties have decided to engage in a course of trade on a cash basis.” Hawkins v. Barnes, 661 So.2d 1271, 1273 (Fla. 5th DCA 1995) (citations omitted).
4. “An open account is one which is based upon a connected series of transactions, and which has no break or interruption .... [A]n open account has been defined as an unsettled debt arising from items of work and labor, goods sold and delivered with the expectation of further transactions subject to further settlement. Money advanced may form the basis of an *331 open account.” Central Ins. Underwriters, Inc. v. National Ins. Fin. Co., 599 So.2d 1371, 1373 (Fla. 3d DCA 1992) (citations and quotations omitted).
5. “An ‘open account’ is ... defined as an unsettled debt arising from items of work and labor, goods sold and delivered, with the expectation of further transactions subject to future settlement and adjustment.” Robert W. Gottfried, Inc. v. Cole, 454 So.2d 695, 696 (Fla. 4th DCA 1984).
6. Fla. R. Civ. P. 1.932 (Form) (“A copy of the account showing items, time of accrual of each, and amount of each must be attached” to the Complaint).
7. But see Evans v. Delro Industries, Inc., 509 So.2d 1262, 1263 (Fla. 1st DCA 1987) (purportedly an action for “open account,” but requiring proof of sales contract, proof of sales price or reasonable value of goods delivered, and proof of actual delivery) (citing Chase Co. v. Miller, 81 Fla. 472, 88 So. 312 (1921) (an action involving common counts for goods bargained and sold and goods sold and delivered), and Alderman Interior Systems, Inc. v. First National-Heller Factors, Inc., 376 So.2d 22 (Fla. 2d DCA 1979) (same)).
416.39 ACCOUNT STATED
(Claimant) claims that (defendant) owes [him][her][it] money on an account stated. An account stated involves a transaction or series of transactions for which a specific amount of money is due. To establish this claim, (claimant) must prove all of the following:
1. (Claimant) and (defendant) had [a transaction] [transactions] between them;
2. [ (Claimant) and (defendant) agreed upon the balance due] [or] [ (Claimant) rendered a statement to (defendant) and (defendant) failed to object within a reasonable time to a statement of [his][her][its] account];
3. (Defendant) expressly or implicitly promised to pay (claimant) [this balance] [the amount set forth in the statement]; and
4. (Defendant) has not paid (claimant) [any][all] of the amount owed under the account.
If the greater weight of the evidence does not support (claimant’s) claim on these issues, then your verdict should be for (defendant). However, if the greater weight of the evidence supports (claimant’s) claim on these issues, [then your verdict should be for (claimant) in the total amount of [his][her][its] damages] [then you shall consider the [defense] [defenses] raised by (defendant) ].
SOURCES AND AUTHORITIES FOR 416.39
1. There must be an agreement between the parties that a certain balance is correct and due and an express or implicit promise to pay this balance. Merrill-Stevens Dry Dock Co. v. Corniche Exp., 400 So.2d 1286, 1286 (Fla. 3d DCA 1981).
2. The action for an account stated is an action for a sum certain, and where there is no such agreement between the parties, the plaintiff may not recover upon a theory of account stated. Merrill-Stevens Dry Dock Co. v. Corniche Exp., 400 So.2d 1286, 1286-87 (Fla. 3d DCA 1981); FDIC v. Brodie, 602 So.2d 1358, 1361 (Fla. 3d DCA 1992); Carpenter Contractors of Am., Inc. v. Fastener Corp. of Am., Inc., 611 So.2d 564, 565 (Fla. 4th DCA 1992).
3. An account statement is not absolutely conclusive upon the parties as the *332 presumption of the account’s accuracy and correctness may be overcome by proof of fraud, mistake, or error. Farley v. Chase Bank, U.S.A., N.A., 37 So.3d 936, 937 (Fla. 4th DCA 2010).
4. An agreement to a resulting balance may be established by the failure to object to the account statement. Myrick v. St. Catherine Laboure Manor, Inc., 529 So.2d 369, 371 (Fla. 1st DCA 1988).
5. An objection to an account must be made within a reasonable time. Robert C. Malt & Co. v. Kelly Tractor Co., 518 So.2d 991, 992 (Fla. 4th DCA 1988).
6. Fla. R. Civ. P. 1.933 (Form) (“A copy of the account showing items, time of accrual of each, and amount of each must be attached” to the Complaint).
416.40 MONEY HAD AND RECEIVED
(Claimant) claims that (defendant) has received money which [he][she][it] ought to refund to (claimant). To establish this claim, (claimant) must prove all of the following:
1. (Defendant) received (claimant’s) money;
2. (Defendant) received the money as the result of (insert brief summary of basis of claim); and
3. The circumstances are such that (defendant) should, in all fairness, be required to return the money to (claimant).
SOURCES AND AUTHORITIES FOR 416.40
1. The common law action for money had and received derives from the common law action of assumpsit. The action is used to recover money which a defendant erroneously receives in circumstances where it would be unjust for the defendant to retain the money. While this is a legal action, it draws “upon the equitable principle that no one ought to be unjustly enriched at the expense of another.” Sharp v. Bowling, 511 So.2d 363, 364-65 (Fla. 5th DCA 1987).
2. A claim for money had and received may be based upon a wide variety of grounds including: (1) upon consideration which has failed, Deco Purchasing & Distributing Co. v. Panzirer, 450 So.2d 1274, 1275 (Fla. 5th DCA 1984); (2) for money paid by mistake, First State Bank of Fort Meade v. Singletary, 124 Fla. 770, 169 So. 407 (1936); (3) for money obtained through imposition, extortion, or coercion, Cullen v. Seaboard Air Line R. Co., 63 Fla. 122, 58 So. 182, 184 (1912); or (4) where defendant had taken undue advantage of claimant’s situation, Moss v. Condict, 154 Fla. 153, 16 So.2d 921, 922 (1944). The foregoing list is not exclusive, and a claim for money had and received may be based upon any set of facts “which show that an injustice would occur if money were not refunded.” Moore Handley, Inc. v. Major Realty Corp., 340 So.2d 1238, 1239 (Fla. 4th DCA 1976).
SECTION 500 — DAMAGES
NOTE ON USE
These instructions are numbered 504 to not conflict with the instructions already numbered 501 through 503 by the Florida Supreme Court Committee on Standard Jury Instructions in Civil Cases.
504.1 INTRODUCTION TO CONTRACT DAMAGES
If you find for (defendant), you will not consider the matter of damages. But, if you find for (claimant), you should award (claimant) an amount of money that the greater weight of the evidence shows will fairly and adequate *333 ly compensate (claimant) for [his][her][its] damages. You shall consider the following type(s) of damages:
504.2 BREACH OF CONTRACT DAMAGES
a. Compensatory damages:
Compensatory damages is that amount of money which will put (claimant) in as good a position as [he][she][it] would have been if (defendant) had not breached the contract and which naturally result from the breach.
SOURCES AND AUTHORITIES FOR 504.2a
1. Capitol Environmental Svcs., Inc. v. Earth Tech, Inc., 25 So.3d 593, 596 (Fla. 1st DCA 2009) (“It is well-settled that the injured party in a breach of contract action is entitled to recover monetary damages that will put it in the same position it would have been had the other party not breached the contract.”).
2. Sharick v. Se. University of the Health Sciences, Inc., 780 So.2d 136, 139 (Fla. 3d DCA 2000) (“Damages recoverable by a party injured by a breach of contract are those which would naturally result from the breach and can reasonably be said to have been contemplated by the parties at the time the contract was made.”).
b. Special damages:
Special damages is that amount of money which will compensate (claimant) for those damages which do not normally result from the breach of contract. To recover special damages, (claimant) must prove that when the parties made the contract, (defendant) knew or reasonably should have known of the special circumstances leading to such damages.
SOURCES AND AUTHORITIES FOR 504.2b
1. Land Title of Central Fla., LLC v. Jimenez, 946 So.2d 90, 93 (Fla. 5th DCA 2006) (“Special damages are those that do not necessarily result from the wrong or breach of contract complained of, or which the law does not imply as a result of that injury, even though they might naturally and proximately result from the injury. More succinctly, special damages are damages that do not follow by implication of law merely upon proof of the breach”) (citations omitted).
2. Hardwick Properties, Inc. v. Newbern, 711 So.2d 35, 40 (Fla. 1st DCA 1998) (“[Sjpecial damages are not likely to occur in the usual course of events, but may reasonably be supposed to have been in contemplation of the parties at the time they made the contract. Special damages consist of items of loss which are peculiar to the party against whom the breach was committed and would not be expected to occur regularly to others in similar circumstances.”) (citation and internal quotations omitted).
3. Hardwick, 711 So.2d at 40 (“Similarly, consequential damages do not arise within the scope of the immediate buyer-seller transaction, but rather stem from losses incurred by the non-breaching party in its dealings, often with third parties, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting.”) (citation and internal quotations omitted).
4. Lanzalotti v. Cohen, 113 So.2d 727, 731 (Fla. 3d DCA 1959) (“Recovery may include special damages which are reasonably and necessarily incurred as a proximate result of the failure of the lessor or sublessor to perform his contract to make a lease or sublease, and such as should *334 reasonably have been contemplated by the parties.”).
5. Fla. E. Coast Railway Co. v. Peters, 77 Fla. 411, 83 So. 559, 563 (1919) (“If the owner of the goods would charge the carrier with any special damages, he must have communicated to the carrier all the facts and circumstances of the case which do not ordinarily attend the carriage or the particular character and value of the property carried, for otherwise such peculiar circumstances cannot be contemplated by the carrier.”) (citation omitted).
504.3 LOST PROFITS
To be entitled to recover lost profits, (claimant) must prove both of the following:
1. (Defendant’s) actions caused (claimant) to lose profits; and
2. (Claimant) can establish the amount of [his][her][its] lost profits with reasonable certainty.
For (claimant) to establish the amount of [his][her][its] lost profits with reasonable certainty, [he][she][it] must prove that a reasonable person would be satisfied that the amount of lost profits which [he][she][it] may be entitled to recover is not simply the result of speculation or guessing. Instead, (claimant) must prove that there is some standard by which the amount of lost profits may be established. (Claimant) does not have to be able to prove that the amount of lost profits can be calculated with mathematical precision as long as [he][she][it] has shown there is a reasonable basis for determining the amount of the loss.
[Even though (claimant’s) business is not established or does not have a “track record,” [he][she][it] still may be able to establish the amount of lost profits which [he][she][it] may be enti-tied to recover if [he][she][it] proves that there is some standard by which the amount of lost profits may be established.]
NOTE ON USE FOR 504.3
Provide the bracketed language if the claimant’s business is not established or does not have a “track record.”
SOURCES AND AUTHORITIES FOR 504.3
1. River Bridge Corp. v. Am. Somax Ventures ex rel. Am. Home Dev. Corp., 18 So.3d 648, 650 (Fla. 4th DCA 2009) (“When a party seeks lost future profits based upon a breach of contract or other wrong, the party must prove that the lost profits were a direct result of the defendant’s actions and that the amount of the lost profits can be established with reasonable certainty.”) (citation and internal quotations omitted).
2. Levitt-ANSCA Toume Park P’ship v. Smith & Co., 873 So.2d 392, 396 (Fla. 4th DCA 2004) (“Lost profits must be proven with a reasonable degree of certainty before they are recoverable. The mind of a prudent impartial person should be satisfied that the damages are not the result of speculation or conjecture.”) (citation and internal quotations omitted).
3. Marshall Auto Painting & Collision, Inc. v. Westco Eng’g, Inc., 2003 WL 25668018, *7 (M.D.Fla.2003) (“[T]he Florida Supreme Court has stated that a business can recover lost prospective profits [if] ... there is some standard by which the amount' of the damages may be adequately determined.... The requisite ... allowance [for lost profits] is some standard, such as regular market values, or other established data, by reference to which the amount may be satisfactorily established.”) (citations and internal quotation marks omitted).
*335 4. W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two, Ltd., 545 So.2d 1348, 1351 (Fla.1989) (“A business can recover lost prospective profits regardless of whether it is established or has any ‘track record.’ The party must prove that 1) the defendant’s action caused the damage and 2) there is some standard by which the amount of damages may be adequately determined.”).
504.4 DAMAGES FOR COMPLETE DESTRUCTION OF BUSINESS
If (claimant) proved that (defendant) completely destroyed (claimant’s) business, then you must award (claimant) damages based upon the market value of (claimant’s) business on the date (claimant’s) business was destroyed.
NOTE ON USE FOR 504.4
The court should give this instruction when the claimant seeks damages for the complete destruction of a business. If a business has not been completely destroyed, then damages based upon the market value of the business are not appropriate, and the court should not give this instruction. Instead, the court should give instruction 504.3 regarding lost profits.
SOURCES AND AUTHORITIES FOR 504.4
1.“If a business is completely destroyed, the proper total measure of damages is the market value of the business on the date of the loss. If the business is not completely destroyed, then it may recover lost profits. A business may not recover both lost profits and the market value of the business.” Montage Grp., Ltd. v. Athle-Tech Computer Systems, Inc., 889 So.2d 180, 193 (Fla. 2d DCA 2004) (citations omitted).
2. “Market value,” as used in this instruction, is not meant to suggest a particular approach to determining market value. See, e.g., Fidelity Warranty Servs., Inc. v. Firstate Ins. Holdings, Inc., 74 So.3d 506, 514 n. 5 (Fla. 4th DCA 2011) (discussing various approaches).
3. “Courts in other jurisdictions have generally rejected the notion that ‘fair value’ is synonymous with ‘fair market value.’ ” Boettcher v. IMC Mortg. Co., 871 So.2d 1047, 1052 (Fla. 2d DCA 2004). “The rationale underlying this language is the recognition that the events that trigger the valuation process may either disrupt or preclude the market for the shares, if in fact such a market ever existed — as in the case of a closely held corporation.” Id. (citation omitted).
504.5 OWNER’S DAMAGES FOR BREACH OF CONTRACT TO CONSTRUCT IMPROVEMENTS ON REAL PROPERTY
The amount of damages recoverable for breach of a contract to construct improvements on real property is:

a. In cases where the defendant does not contend that the damages claimed by the claimant constitute unreasonable economic waste:

The reasonable cost to (claimant) of completing the work in accordance with the contract less the balance due under the contract.

b. In cases where the defendant contends that the damages claimed by the claimant constitute unreasonable economic waste:

If construction and completion in accordance with the contract would not involve unreasonable economic waste, the reasonable cost to (claimant) of completing the work in accordance with the *336 contract less the balance due under the contract;
or
If construction and completion in accordance with the contract would involve unreasonable economic waste, the difference between the fair market value of (claimant’s) real property as improved and its fair market value if (defendant) had constructed the improvements in accordance with the contract, measured at the time of the breach.
SOURCES AND AUTHORITIES FOR 504.5
1.In Grossman Holdings Ltd. v. Hourihan, 414 So.2d 1037, 1039 (Fla.1982), the Florida Supreme Court adopted Section 346 of the Restatement (First) of Contracts (1932), which provides, in relevant part:
For a breach by one who has contracted to construct a specified product, the other party can get judgment for compensatory damages for all unavoidable harm that the builder had reason to foresee when the contract was made, less such part of the contract price as has not been paid and is not still payable, determined as follows:
(a) For defective or unfinished construction he can get judgment for either
(i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or
(ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste.
2. Heine v. Parent Construction, Inc., 4 So.3d 790, 792 (Fla. 4th DCA 2009) (“The [Florida] [S]upreme [C]ourt ... adopted section 346(1)(a) of the Restatement (First) of Contracts (1932), as the law for the measure of damages in a claim for breach of a construction contract.”).
3. Centex-Rooney Construction Co. v. Martin Cnty., 706 So.2d 20, 27 (Fla. 4th DCA 1997) (“In a case involving the breach of a construction contract, a recognized measure of damages is the reasonable cost of performing construction and repairs in conformance with the original contract’s requirements.”).
504.6 OBLIGATION TO PAY MONEY ONLY
To recover damages for the breach of a contract to pay money, (claimant) must prove the amount due under the contract.
SOURCE AND AUTHORITY FOR 504.6
See Murciano v. Garcia, 958 So.2d 423, 423 (Fla. 3d DCA 2007) (“[T]o prevail on a breach of contract action, [a plaintiff] must prove (1) a valid contract; (2) a material breach; and (3) damages.”).
504.7 BUYER’S DAMAGES FOR BREACH OF CONTRACT FOR SALE OF REAL PROPERTY
To recover damages for the breach of a contract to sell real property, (claimant) must prove that [he][she][it] was ready, willing, and able to perform the contract.
If (claimant) proves that [he][she][it] was ready, willing, and able to perform the contract, then (claimant) may recover:
*337 1. The amount of any payment made by (claimant) toward the purchase price; and
2. The amount of any reasonable expenses for examining title.
If (claimant) also proves that (defendant) acted in bad faith in breaching the contract or that (defendant) sold the property to a third party after entering into the contract, then (claimant) also may recover the difference between the fair market value of the property on the date of the breach and the contract price.
NOTE ON USE FOR 504.7
The court should give this instruction when a buyer is seeking damages as a remedy for the breach of a contract for the sale of real property. This instruction does not apply to claims for specific performance. See Castigliano v. O’Connor, 911 So.2d 145, 148 (Fla. 3d DCA 2005) (a decree of specific performance is an equitable remedy); 381651 Alberta, Ltd. v. 279298 Alberta, Ltd., 675 So.2d 1385, 1387 (Fla. 4th DCA 1996) (the right to a jury trial applies only to legal and not equitable causes of action).
SOURCES AND AUTHORITIES FOR 504.7
1. In Gassner v. Lockett, 101 So.2d 33, 34 (Fla.1958), the Florida Supreme Court, quoting Key v. Alexander, 91 Fla. 975, 108 So. 883, 885 (1926), stated (emphasis and internal quotations omitted):
The law is well settled that in an action brought by the vendee against the vendor upon a valid contract for the sale of land when the vendor has breached such contract, the general rule as to the measure of damages is that the vendee is entitled to such purchase money as he paid, together with interest and expenses of investigating title. This rule, however, does not apply where there is want of good faith in the vendor, which may be shown by any acts inconsistent with the utmost good faith. In such cases, or in cases where the vendor had no title but acting on the supposition that he might acquire title, he is liable for the value of the land at the time of the breach with interest from that date....
The reason for the rule seems to be that where a vendor acts in good faith he should not be liable for more than the actual loss which might be suffered by the vendee. On the other hand, there is no reason why the vendor should be allowed to benefit from such mistake even though it was made in good faith. Every rule of logic and justice would seem to indicate that where a vendor is unable to perform a prior contract for the sale of lands because of a subsequent sale of the same land, he should be held, to the extent of any profit in the subsequent sale, to be a trustee for the prior vendee and accountable to such vendee for any profit.
2. Hollywood Mall, Inc. v. Capozzi, 545 So.2d 918, 921 (Fla. 4th DCA 1989) (“To obtain damages for anticipatory breach of contract, the purchaser must also show that he was ready, willing, and able to perform the contract.”) (citing Hosp. Mortg. Grp. v. First Prudential Dev. Corp., 411 So.2d 181 (Fla.1982)).
3. Coppola Enterprises, Inc. v. Alfone, 531 So.2d 334, 335-36 (Fla.1988) (“A seder will not be permitted to profit from his breach of a contract with a buyer, even absent proof of fraud or bad faith, when the breach is followed by a sale of the land to a subsequent purchaser.”).
4. Port Largo Club, Inc. v. Warren, 476 So.2d 1330, 1333 (Fla. 3d DCA 1985) *338 (“Where bad faith exists a purchaser may obtain, as a portion of his full compensatory damages, loss of bargain damages, i.e., the difference between the contract price and the value of the property on the closing date.”).
5. Wolofsky v. Behrman, 454 So.2d 614, 615 (Fla. 4th DCA 1984) (“Florida has long since aligned itself with the English rule announced in Flureau v. Thornhill, 2 W.Bl. 1078, 96 Eng.Rep. 635, to the effect that, except where a vendor has acted in bad faith, his liability for breach of a land sale contract is limited to the amount of the deposit paid by the purchaser, with interest and reimbursement for expenses in investigating title to the property. However, absent good faith, he is liable for full compensatory damages, including the loss of his bargain, which is the difference between the value of the property and the contract price.”).
6. Bosso v. Neuner, 426 So.2d 1209, 1212 (Fla. 4th DCA 1983) (“However, where bad faith exists the purchaser may obtain loss of bargain damages which is the difference in value between the price the purchaser had agreed to pay and the value of the property on the contracted date for closing”).
7. Horton v. O’Rourke, 321 So.2d 612, 613 (Fla. 2d DCA 1975) (“[I]n the absence of bad faith the damages recoverable for breach by the vendor of an executory contract to convey title to real estate are the purchase money paid by the purchaser together with interest and expenses of investigating title.”).
504.8 SELLER’S DAMAGES FOR BREACH OF CONTRACT TO PURCHASE REAL PROPERTY
To recover damages for the breach of a contract to buy real property, (claimant) must prove that [he][she][it] performed, or had the ability to perform, all of [his][her][its] obligations necessary for closing.
If (claimant) proves that [he][she][it] performed, or had the ability to perform, all of [his][her][its] obligations necessary for closing, then (claimant) may recover:
1. The difference between the contract sales price and the fair market value of the property on the date of the breach, less any amount which (defendant) previously paid; and
2. Any damages which the parties contemplated when the parties made the contract and which normally result from the breach of contract.
NOTES ON USE FOR 504.8
1. The court should give this instruction when a seller is seeking damages as a remedy for the breach of a contract for the purchase of real property. This instruction does not apply to claims for specific performance. See Castigliano v. O’Connor, 911 So.2d 145, 148 (Fla. 3d DCA 2005) (a decree of specific performance is an equitable remedy); 381651 Alberta, Ltd. v. 279298 Alberta, Ltd., 675 So.2d 1385, 1387 (Fla. 4th DCA 1996) (the right to a jury trial applies only to legal and not equitable causes of action).
2. The court should give this instruction where the contract does not contain a liquidated damages provision or where the liquidated damages provision has been determined to be unenforceable.
SOURCES AND AUTHORITIES FOR 504.8
1. Pembroke v. Caudill, 160 Fla. 948, 37 So.2d 538, 541 (1948) (receded from on other grounds by Hutchison v. Tompkins, 259 So.2d 129, 130 (Fla.1972)) (“[T]he *339 measure of the sellers’ damage ordinarily being in such cases [where the buyer breaches the contract] the difference between the agreed purchase price and the actual value of the property at the time of the breach of the contract of purchase, less the amount paid.”).
2. Buschman v. Clark, 583 So.2d 799, 800 (Fla. 1st DCA 1991) (“[T]he measure of damages for breach of a real estate sales contract is the difference between the contract sales price and the fair market value of the property on the date of the breach. All additional damages must be alleged and proved to have been contemplated by the parties and must be a natural and proximate result of the breach.”).
3. When the seller elects to sue for breach of contract, “the measure of damages is the difference between the price the buyer agreed to pay for the property and the fair market value of the property on the date of the breach.” Frank Silvestri, Inc. v. Hilltop Developers, Inc., 418 So.2d 1201, 1203 (Fla. 5th DCA 1982). “If a seller has suffered additional damage, he must allege and prove that those damages were contemplated by the parties and were a natural and proximate result of the breach.” Id. at 1203 n. 1.
4. Cohen v. Champlain Towers N. Assocs., 452 So.2d 989, 991 (Fla. 3d DCA 1984) (seller must show ability to perform all conditions precedent to recover damages) (citing Hosp. Mortg. Grp. v. First Prudential Dev. Corp., 411 So.2d 181 (Fla.1982)).
5. Redmond v. Prosper, Inc., 364 So.2d 812, 813 (Fla. 3d DCA 1978) (proper measure of damages for breach of real estate contract is “the excess of the contract sales price over the market value as of the time of the breach, less the amount previously paid”).
6. Popwell v. Abel, 226 So.2d 418, 422 (Fla. 4th DCA 1969) (“In the ordinary case where a purchaser of land breaches his contract to buy, the difference between the value of the land on the date of breach as compared with the date of sale would restore the vendor, but the vendor may still allege and prove as proper elements of damage all those damages contemplated by the parties which are a natural and proximate result of the breach.”).
504.9 MITIGATION OF DAMAGES
If (defendant) breached the contract and the breach caused damages, (claimant) is not entitled to recover for those damages which (defendant) proves (claimant) could have avoided with reasonable efforts or expenditures. You should consider the reasonableness of (claimant’s) efforts in light of the circumstances facing [him][her][it] at the time, including [his][her][its] ability to make the efforts or expenditures without undue [risk] [burden] [or] [humiliation].
If (claimant) made reasonable efforts to avoid the damages caused by the breach, then your award should include reasonable amounts that [he][she][it] spent for this purpose.
NOTE ON USE FOR 504.9
This instruction is intended primarily for use in exclusive contract cases when the defense of mitigation of damages has been asserted, as non-exclusive contracts are generally considered an exception to the doctrine of avoidable consequences. See Graphic Assocs., Inc. v. Riviana Rest. Corp., 461 So.2d 1011, 1014 (Fla. 4th DCA 1984); Calimari and Perillo, The Law of Contracts § 14-16. This instruction does not use the somewhat inaccurate term “duty to mitigate” damages because *340 “[t]here is no actual ‘duty to mitigate,’ because the injured party is not compelled to undertake any ameliorative efforts.” Sys. Components Corp. v. Fla. Dep’t of Transp., 14 So.3d 967, 982 (Fla.2009).
SOURCES AND AUTHORITIES FOR 504.9
1. Sys. Components Corp. v. Fla. Dep’t of Transp., 14 So.3d 967, 982 (Fla.2009) (“The doctrine of avoidable consequences ... commonly applies in contract and tort actions.... The doctrine does not permit damage reduction based on what ‘could have been avoided’ through Herculean efforts. Rather, the injured party is only accountable for those hypothetical ameliorative actions that could have been accomplished through ‘ordinary and reasonable care’ without requiring undue effort or expense.”) (internal citations omitted).
2. Graphic Associates, Inc. v. Riviana Rest. Corp., 461 So.2d 1011, 1014 (Fla. 4th DCA 1984) (“The doctrine of avoidable consequences, commonly referred to as a duty to mitigate damages, prevents a party from recovering those damages inflicted by a wrongdoer which the injured party ‘could have avoided without undue risk, burden, or humiliation.’”) (citation omitted).
3. Restatement (Second) of Contracts § 350 (1981) (“(1) Except as stated in Subsection (2), damages are not recoverable for loss that the injured party could have avoided without undue risk, burden or humiliation. (2) The injured party is not precluded from recovery by the rule stated in Subsection (1) to the extent that he has made reasonable but unsuccessful efforts to avoid loss.”).
504.10 PRESENT CASH VALUE OF FUTURE DAMAGES
Any amount of damages which you award for future damages should be reduced to its present money value and only the present money value of these future damages should be included in your verdict.
The present money value of future damages is the sum of money needed now which, together with what that sum will earn in the future, will compensate (claimant) for these damages as they are actually experienced in future years.
SOURCES AND AUTHORITIES FOR 504.10
1. Designing a standard instruction for reduction of damages to present value is complicated by the fact that there are several different methods used by economists and courts to arrive at a present-value determination. See, e.g., Delta Air Lines, Inc. v. Ageloff, 552 So.2d 1089 (Fla.1989), and Renuart Lumber Yards v. Levine, 49 So.2d 97 (Fla.1950) (using approach similar to calculation of cost of annuity); Jones Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983), and Loftin v. Wilson, 67 So.2d 185 (Fla.1953) (lost stream of income approach); Beaulieu v. Elliott, 434 P.2d 665 (Alaska 1967) (total offset method); Culver v. Slater Boat Co., 688 F.2d 280 (5th Cir.1982), and Seaboard Coast Line R.R. v. Garrison, 336 So.2d 423 (Fla. 2d DCA 1976) (discussing real interest rate discount method and inflation/market rate discount methods); and Bould v. Touchette, 349 So.2d 1181 (Fla.1977) (even without evidence, juries may consider effects of inflation).
2. Until the Supreme Court or the legislature adopts one approach to the exclusion of other methods of calculating present money value, the committee assumes that the present value of future damages is a finding to be made by the jury on the evidence; or, if the parties offer no evi *341 dence to control that finding, that the jury properly resorts to its own common knowledge as guided by this instruction and by argument. See Seaboard Coast Line R.R. v. Burdi, 427 So.2d 1048 (Fla. 3d DCA 1983).
504.11 NOMINAL DAMAGES
If you decide that (defendant) breached the contract but also that (claimant) did not prove any loss or damage, you may still award (claimant) nominal damages such as one dollar.
SOURCES AND AUTHORITIES FOR 504.11
1. AMC/Jeep of Vero Beach, Inc. v. Funston, 403 So.2d 602, 605 (Fla. 4th DCA 1981) (“While there is a legal remedy for every legal wrong and, thus, a cause of action exists for every breach of contract, an aggrieved party who has suffered no damage is only entitled to a judgment for nominal damages.”).
2. Dep’t of Transp. v. Weisenfeld, 617 So.2d 1071, 1086 (Fla. 5th DCA 1993) (“Whenever the intentional invasion of a legal right occurs the law infers some damage to the party whose rights were violated and if no evidence is adduced as to any particular specific loss or damage, the law ‘rights’ or remedies the wrong by awarding nominal damages, usually in the amount of $1.00.”).
SECTION 600 — SUBSTANTIVE INSTRUCTIONS — GENERAL 601.1 WEIGHING THE EVIDENCE
In deciding this case, it is your duty as jurors [to decide the issues, and only those issues, that I submit for your determination] [to answer certain questions I ask you to answer on a special form, called a verdict form]. You must come to an agreement about [your ver-diet] [what your answers will be. Your agreed-upon answers to my questions are called your jury verdict].
The evidence in this case consists of the sworn testimony of the witnesses, all exhibits received in evidence [and] all facts that were admitted or agreed to by the parties [, and any fact of which the court has taken judicial notice (explain as necessary) ].
In reaching your verdict, you must think about and weigh the testimony and any documents, photographs, or other material that has been received in evidence. You may also consider any facts that were admitted or agreed to by the lawyers. Your job is to determine what the facts are. You may use reason and common sense to reach conclusions. You may draw reasonable inferences from the evidence. But you should not guess about things that were not covered here. And, you must always apply the law as I have explained it to you.
601.2 BELIEVABILITY OF WITNESSES

a. General considerations:

Let me speak briefly about witnesses. In evaluating the believability of any witness and the weight you will give the testimony of any witness, you may properly consider the demeanor of the witness while testifying; the frankness or lack of frankness of the witness; the intelligence of the witness; any interest the witness may have in the outcome of the case; the means and opportunity the witness had to know the facts about which the witness testified; the ability of the witness to remember the matters about which the witness testified; and the reasonableness of the testimony of the witness, considered in the light of all the evidence in the case and in the *342 light of your own experience and common sense.

b. Expert witnesses:

[You have heard opinion testimony [on certain technical subjects] from [a person] [persons] referred to as [an] expert witnesses].] [Some of the testimony before you was in the form of opinions about certain technical subjects.]
You may accept such opinion testimony, reject it, or give it the weight you think it deserves, considering the knowledge, skill, experience, training, or education of the witness, the reasons given by the witness for the opinion expressed, and all the other evidence in the case.
NOTES ON USE FOR 601.2
1. Expert witness. See F.S. 90.702 (1985), and Shaw v. Puleo, 159 So.2d 641 (Fla.1964). The court will select one or the other introductory sentence in keeping with the courts practice and preference in announcing before the jury, or acceding to counsels characterization, that a tendered witness is an “expert.”
2. Common knowledge and everyday experience. Except to the extent indicated in instruction 601.2, the committee recommends that the jury not be instructed that the jurors may bring to bear their “common knowledge and everyday experience.”
3. Failure to produce witness. The committee recommends that no instruction be given. While it may be permissible in some circumstances to instruct the jury regarding inferences arising from a party’s failure to produce a witness (compare Weeks v. Atlantic Coast Line R.R. Co., 132 So.2d 315 (Fla. 1st DCA 1961), with Georgia Southern Florida Railway Co. v. Perry, 326 F.2d 921 (5th Cir.1964)), the committee believes that generally such inferences are more properly referred to in counsels argument.
601.3 JURY TO BE GUIDED BY OFFICIAL ENGLISH TRANSLATION/INTERPRETATION
[A] [Some] witness[es] have testified in (language used) which was interpreted into English.
The evidence you are to consider is only that provided through the official court interpreters. Although some of you may know (language used), it is important that all jurors consider the same evidence. Therefore, you must base your decision on the evidence presented in the English interpretation. You must disregard any different meaning.
If, during the testimony there was a question as to the accuracy of the English interpretation and steps were taken to resolve any discrepancies and despite these efforts a discrepancy remains, I emphasize that you must rely only upon the official English interpretation as provided by the court interpreter and disregard any other contrary interpretation.
NOTES ON USE FOR 601.3
1. See United States v. Franco, 136 F.3d 622, 626 (9th Cir.1998); United States v. Rrapi, 175 F.3d 742, 748 (9th Cir.1999); United States v. Fuentes-Montijo, 68 F.3d 352, 355-56 (9th Cir.1995).
2. When instructing the jury at the beginning of the case, use instruction 202.5 instead of this instruction.
601.4 MULTIPLE CLAIMS, NUMEROUS PARTIES, CONSOLIDATED CASES
In your deliberations, you will consider and decide [several] [ (state the number) ] distinct claims. (Identify claims to *343 be considered.) Although these claims have been tried together, each is separate from the other[s], and each party is entitled to have you separately consider each claim as it affects that party. Therefore, in your deliberations, you should consider the evidence as it relates to each claim separately, as you would had each claim been tried before you separately.
NOTE ON USE FOR 601.4
This instruction is applicable to two or more consolidated actions as well as to two or more claims in the same action by or against different persons or by or against the same person in different capacities. The committee recommends that this instruction not be given to distinguish between a primary claim and a derivative claim {e.g., that of the injured party and that of his or her spouse) or between a claim against a party primarily liable and a claim against a party liable only vicariously {e.g., claims against a party actively negligent and against his employer) or claims under F.S. 768.0415.
601.5 CONCLUDING INSTRUCTION (BEFORE FINAL ARGUMENT)
That is the law you must follow in deciding this case. The attorneys for the parties will now present their final arguments. When they are through, I will have a few final instructions about your deliberations.
NOTE ON USE FOR 601.5
Instruction 601.5 is for use when instructing the jury before final argument. If the court’s instruction is to be given after final argument, skip to instruction 700 and omit the bracketed sentence in the first paragraph.
SECTION 700 — CLOSING INSTRUCTIONS
Members of the jury, you have now heard all the evidence, my instructions on the law that you must apply in reaching your verdict and the closing arguments of the attorneys. You will shortly retire to the jury room to decide this case. [Before you do so, I have a few last instructions for you.]
During deliberations, jurors must communicate about the case only with one another and only when all jurors are present in the jury room. You will have in the jury room all of the evidence that was received during the trial. In reaching your decision, do not do any research on your own or as a group. Do not use dictionaries, the Internet, or any other reference materials. Do not investigate the case or conduct any experiments. Do not visit or view the scene of any event involved in this case or look at maps or pictures on the Internet. If you happen to pass by the scene, do not stop or investigate. All jurors must see or hear the same evidence at the same time. Do not read, listen to, or watch any news accounts of this trial.
You are not to communicate with any person outside the jury about this case. Until you have reached a verdict, you must not talk about this case in person or through the telephone, writing, or electronic communication, such as a blog, twitter, e-mail, text message, or any other means. Do not contact anyone to assist you, such as a family accountant, doctor, or lawyer. These communications rules apply until I discharge you at the end of the case. If you become aware of any violation of these instructions or any other instruction I have given in this case, you must tell me by giving a note to the bailiff.
*344 Any notes you have taken during the trial may be taken to the jury room for use during your discussions.' Your notes are simply an aid to your own memory, and neither your notes nor those of any other juror are binding or conclusive. Your notes are not a substitute for your own memory or that of other jurors. Instead, your verdict must result from the collective memory and judgment of all jurors based on the evidence and testimony presented during the trial.
At the conclusion of the trial, the bailiff will collect all of your notes and immediately destroy them. No one will ever read your notes.
In reaching your verdict, do not let bias, sympathy, prejudice, public opinion, or any other sentiment for or against any party to influence your decision. Your verdict must be based on the evidence that has been received and the law on which I have instructed you.
Reaching a verdict is exclusively your job. I cannot participate in that decision in any way and you should not guess what I think your verdict should be from something I may have said or done. You should not think that I prefer one verdict over another. Therefore, in reaching your verdict, you should not consider anything that I have said or done, except for my specific instructions to you.
Pay careful attention to all the instructions that I gave you, for that is the law that you must follow. You will have a copy of my instructions with you when you go to the jury room to deliberate. All the instructions are important, and you must consider all of them together. There are no other laws that apply to this case, and even if you do not agree with these laws, you must use them in reaching your decision in this case.
When you go to the jury room, the first thing you should do is choose a presiding juror to act as a foreperson during your deliberations. The foreperson should see to it that your discussions are orderly and that everyone has a fair chance to be heard.
It is your duty to talk with one another in the jury room and to consider the views of all the jurors. Each of you must decide the case for yourself, but only after you have considered the evidence with the other members of the jury. Feel free to change your mind if you are convinced that your position should be different. You should all try to agree. But do not give up your honest beliefs just because the others think differently. Keep an open mind so that you and your fellow jurors can easily share ideas about the case.
[I will give you a verdict form with questions you must answer. I have already instructed you on the law that you are to use in answering these questions. You must follow my instructions and the form carefully. You must consider each question separately. Please answer the questions in the order they appear. After you answer a question, the form tells you what to do next. I will now read the form to you: (read form of verdict) ]
[You will be given (state number) forms of verdict, which I shall now read to you: (read form of verdict(s)) ]
[If you find for (claimant(s)), your verdict will be in the following form: (read form of verdict) ]
[If you find for (defendant(s)), your verdict will be in the following form: (read form of verdict) ]
*345 Your verdict[s] must be unanimous, that is, your verdict must be agreed to by each of you. When you have [agreed on your verdict[s]] [finished filling out the form[s]], your foreperson must write the date and sign it at the bottom and return the verdict[s] to the bailiff.
If any of you need to communicate with me for any reason, write me a note and give it to the bailiff. In your note, do not disclose any vote or split or the reason for the communication.
You may now retire to decide your verdict[s].
NOTES ON USE FOR 700
1. When final instructions are read to the jury before the attorney’s closing arguments, this instruction should not be given at that time. It should be given following closing arguments, just before the jury retires to deliberate. If, however, the entire instruction is given after final arguments, omit the bracketed sentence in the first paragraph.
2. The portion of this instruction dealing with communication with others and outside research may need to be modified to include other specific means of communication or research as technology develops.
3. Florida Rule of Judicial Administration 2.430(k) provides that at the conclusion of the trial, the court shall collect and immediately destroy all juror notes.
4. Quotient verdict. The committee recommends that no instruction generally be given to admonish the jury against returning a “quotient verdict.”
5. When it is impracticable to take all of the evidence into the jury room, this instruction should be modified accordingly.
SECTION 800 — SUPPLEMENTAL MATTERS
801.1 JUROR QUESTIONS DURING DELIBERATIONS
Members of the jury, I have discussed your [note] [question] with the attorneys. You have [asked the following question] [made the following request]:

(read juror’s note):

If I have not read your [note] [question] correctly, please raise your hand.

(clarify question as needed):

1. The answer is:

(respond to question):

OR

2. I am not able to [answer] [respond to] this [question] [request] because it [calls for information that is not in evidence] [is not proper to be considered in this case] [ (other reason why question or request is improper)]. Your decision must be based only on the evidence presented in the trial and the law that I have given you. [If you have any other specific questions, please send another note, and I will see if I can answer it.] [ (other appropriate response) ].
NOTES ON USE FOR 801.1
1. The procedure contained in 801.1 assumes that a juror question or request will be in writing. Oral questions from jurors are discouraged.
2. In responding to a juror’s question or request, the court should answer as specifically as possible. To avoid inadvertent error, it is a good practice to prepare a written answer with the assistance of the attorneys and then read this answer to the jury.
3. All written questions and answers should be preserved and placed in the court file.
*346 801.2 READ-BACK OF TESTIMONY

a. Read-back granted as requested:

Members of the jury, you have asked that the following testimony be read back to you: (describe testimony)
The court reporter will now read the testimony, which you have requested.

OR

b. Read-back deferred:

Members of the jury, I have discussed with the attorneys your request to have certain testimony read back to you. It will take approximately (amount of time) to have the court reporter prepare and read back the requested testimony.
I now direct you to return to the jury room and discuss your request further. If you are not able to resolve your question about the requested testimony by relying on your collective memory, then you should write down a more specific description of the part of the witness(es)’ testimony which you want to hear again. Make your request for reading back testimony as specific as possible.
c. Read-back denied:
Members of the jury, you have asked that the following testimony be read back to you: (describe testimony)
I am not able to grant your request because (give reason(s) for denying request).
NOTES ON USE FOR 801.2
1. In civil cases, the decision to allow read-back of testimony lies within the sound discretion of the trial court. Broward County School Bd. v. Ruiz, 493 So.2d 474, 479-80 (Fla. 4th DCA 1986). However, the trial court must not tell jurors that they are prohibited from requesting a read-back of testimony. Johnson v. State, 53 So.3d 1003 (Fla.2010).
2. Any read-back of testimony must take place in open court. Transcripts or tapes of testimony must not be sent back to the jury room.
801.3 JURY DEADLOCKED
Members of the jury, we understand you are having difficulty reaching a verdict. This case is important to the parties, and we appreciate your efforts. But I am going to ask you to go back to try again to reach a verdict if you reasonably can.
Please carefully consider the views of all the jurors, including those you disagree with. Keep an open mind and feel free to change your view if you conclude it is wrong.
You should not, however, give up your own conscientiously held views simply to end the case or avoid further discussion. Each of you must decide the case for yourself and not merely go along with the conclusions of other jurors.
If you cannot agree on what a witness said, you may ask that the court reporter read back to you a portion of any witness’s testimony. To avoid delay, your request should be as specific as possible.
You may now return to the jury room for further deliberations.
NOTES ON USE FOR 801.3
1. This instruction should not be given unless the jury indicates it is deadlocked. Moore v. State, 635 So.2d 998 (Fla. 4th DCA 1994); Armstrong v. State, 364 So.2d 1238 (Fla. 1st DCA 1978).
2. This instruction should be given only once. If after having received this instruction, the jury announces again that it is *347 deadlocked, the jury cannot be sent back for further deliberations. Tomlinson v. State, 584 So.2d 43 (Fla. 4th DCA 1991).
801.4 INSTRUCTION UPON DISCHARGE OF JURY
Ladies and gentlemen, on behalf of the parties, lawyers and the people of the State of Florida, I wish to thank you for your time and consideration of this case.
I also wish to advise you of some very special privileges enjoyed by jurors.
No juror can be required to talk about the discussions that occurred in the jury room, except by court order. For many centuries, our society has relied upon juries for consideration of difficult cases. We have recognized for hundreds of years that a jury’s deliberations, discussions and votes should remain their private affair as long as they wish it. Therefore, the law gives you a unique privilege not to speak about the jury’s work.
The lawyers and their representatives are not permitted to initiate any communication with you about the trial. However, you may speak to the lawyers or anyone else about the trial. You also have the right to refuse to speak with anyone. A request may come from those who are simply curious, or from those who might seek to find fault with you. It will be up to you to decide whether to preserve your privacy as a juror.

(In discharging the jury, the court should advise them of their further responsibilities, if any.)

NOTE ON USE FOR 801.4
After this instruction, the jury should be discharged and no further discussion should be had between the judge and the jurors, or between the attorneys and jurors, except in accordance with applicable law. See Fla. R. Civ. P. 1.431(h); Rule Reg. Fla. Bar 4-3.5(d)(4).

. Following Judge Smith’s appointment as a United States Magistrate for the Middle District of Florida, Judge Jonathan D. Gerber, Appellate Judge for the Fourth District Court of Appeal, was appointed to serve as the Corn-mittee's Chair. In re Supreme Court Committee on Standard Jury Instructions—Contract and Business Cases, AOSC11-39, at 2 (Oct. 27, 2011).

. The Committee used a different numbering convention when it published the proposals than has been proposed for the book format, but the substance of all of the proposals has been published in The Florida Bar News for comment.